GARRISON, Judge.
This is an appeal from a judgment of the district court rendered January 3, 1983 granting judgment as follows:
“1. IT IS ORDERED, ADJUDGED AND DECREED that the defendants, Lacour Investments, Gulf South Development & Management Company, Pearson Construction Company, Providence Memorial Park, Inc. and Century Graphics, Inc. are dismissed without prejudice upon Motion of plaintiffs.
2. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a mandatory injunction is issued herein directing defendant, Southwood Limited Partnership, a/k/a Southwood Patio Homes, to file a new application with the City Planning Commission of the City of New Orleans for approval, modification or denial of a Residential Planned Community (RPC) and Conditional Use zoning status with reference to and in accordance with the Site Plan recorded December 2, 1981, C.O.B. 776, folio 259, Parish of Orleans. Southwood is further ordered to make the new application and file same with the City Planning Commission of the City of New Orleans within thirty (30) days of the rendition of this judgment.
3. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the City of New Orleans, through the City Planning Commission is ordered to receive the new application of Southwood and to process same in accordance with the provisions of the Zoning Ordinance of the City of New Orleans and within the time delays provided therein and to provide such public notices and public hearing as the Zoning Ordinance requires. Further, the City of New Orleans, through the City Council of the City of New Orleans is ordered to docket and consider the new application of Southwood after receipt of recommendations from the City Planning Commission in accordance with the time delays, public notices and public hearing required by the Zoning Ordinance of the City of New Orleans for approval, denial or modification of such application.
4. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Building Permits issued Southwood for construction in accordance with the Site Plan recorded on December 2, 1982, in C.O.B. 776, folio 259, Parish of Orleans, are not now revoked or rescinded pending the final approval, modification or denial of the new application for zoning by Southwood. In the event that the new application of Southwood is approved, modified or denied by the City Council, then the City of New Orleans, through its Department of Safety and Permits shall be charged with the duty under the Zoning Ordinance to confirm such Building Permits in accordance with an approval, or to amend such Building Permits in accordance with a modification or to revoke Building or Use and Occupancy Permits in accordance with a denial of the application.
5. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants shall pay all costs of these proceedings.”
Plaintiffs in the instant appeal are:
1. Tall Timbers Owners Association, a non-profit property owners group of 500 homeowners, and Michael J. Aratingi, John H. Norman and Pamela Johnson, both in their capacity as officers of the association and individually.
2. Aurora Community Association, Inc., a non-profit property owners corporation of 700 homeowners, and Paul G. Richard, both in his capacity as an officer and individually.
3. Bocage Civic Association, Inc., a nonprofit corporation of 300 homeowners, and Joseph J. Sabatino, both in his capacity as an officer and individually.
4. Park Timbers Association, Inc., a non-profit property owners corporation of 300 homeowners, and James Wessel, both in his capacity as an officer and individually.
*88 All of the 1800 homeowners are domiciled in the parish of Orleans in Algiers.
The defendants are as follows:
1. All City Councilmen and the Mayor, in their official capacity as representatives of the City of New Orleans.
2. Harold Gorman, Director of the Department of Safety and Permits.
3. Southwood Limited Partnership d/b/a Southwood Pation Homes, a Louisiana partnership which has a development or ownership interest in the development at issue, and its partners Dr. Lawrence J. Derbes, Carl J. Eberts, John J. Derbes, and Ronald L. Brignac, Managing Partner.
4. Lacour Investment, a Louisiana partnership voluntarily dismissed without prejudice by plaintiff.
5. Gulf South Development and Management Co., Inc., also voluntarily dismissed.
6. Pearson Construction Corporation, also voluntarily dismissed.
7. Providence Memorial Park, Inc., also voluntarily dismissed.
8. Century Graphics, also voluntarily dismissed.
On December 21, 1970 H.C. Bynum and R.A. McCloud, owners of the property Parcels B and B-l, Fifth Municipal District bounded by Simpson Place, Sunflower Street and Tullís Drive, filed a request with the City Planning Commission requesting a Conditional Use, i.e. Townhouse in an RD-2 (Two-Family Residential) District and Residential Planned Community status (R.P.C.).
The RD-2 zoning controlled the use of the property as well as density and other factors:
“Section 2. RD-1, and RD-3 Two-Family Residential Districts.
2.1 Purpose of the Districts.
The purpose of these districts is to provide for two-family or townhouse dwelling developments (in the RD-1 and RD-3 Districts) mixed with single-family dwellings, together with such churches, recreational facilities and with accessory uses as may be necessary or are normally compatible with residential surroundings. RD-1 is intended to provide for more spacious developments, generally in the outlying sections of the City; RD-2 and RD-3 provide for developments on smaller lots generally in older, more densely populated sections and the height of buildings in all RD Districts are low enough to be compatible with neighboring single-family development. Permitted community facilities are the same as for the single-family residential districts.
2.2 Permitted Uses.
A building or land shall be used only for the following purposes:
1. Any use permitted in the RS-1 and RS-2 Single Family Residential Districts.
2. Two-family dwellings.
3. Townhouses in the RD-1 and RD-3 Districts only.
4. Homes for the aged, nursing homes, convalescent homes and orphan homes on a site of not less than 65,000 square feet, or 700 square feet for each occupant, whichever is the greater, including permanent employees who will be domiciled upon the site and provided further that the total ground floor area of the building or buildings shall not exceed 50 per cent of the total site area.
5. Child Care Centers provided that ...

2.4 Permitted Conditional Uses
In order to provide for certain uses which, because of their unique characteristics, cannot be properly classified in a particular zoning district, the City Council under the provisions of Article 15 and specifically under Section 2.6 shall authorize the following conditional uses:
When it has been determined by the City Council that such conditional uses will promote the public welfare, public safety, and public health, and that the proposal is in general compatibility with adjacent or nearby land uses. Applications for the following conditional uses shall be transmitted to the City Planning Com *89 mission for a public hearing and action in accord with the provisions of Article 15.

3. Townhouses, in RD-2 when located on a site containing at least 2,000 square feet of lot are per unit with a minimum lot width of 18 feet and lot depth of 90 feet and a height limit of forty (40) feet and provided further that such structures will provide a front yard of at least 20 feet, a side yard of 10 feet and a rear yard of 20 feet and further that said structures will conform to the supplemental regulations governing two-family dwellings and townhouses of Article 10, except, however, that no townhouses shall be permitted in the RD-2 District where it has been applied to the area bounded by St. Charles Avenue, the downtown side of Jackson Avenue, Magazine Street and the uptown side of Louisiana Avenue, inclusive of lots bordering on said boundary frontages where RD-2 zoning is applicable, commonly referred to as the Garden District.”
None of the permitted uses or permitted conditional uses allow for apartments or multi-family dwellings in RD-1, RD-2, or RD-3 zoned areas. Multi-family dwellings or apartments are allowed only under the RM (Multiple-Family Residential) classifications only in areas zoned RM-1, RM-2, RM-3, and RM-4.
The Bynum and McCloud request for RD-2 townhouse zoning was assigned docket number 41/70. A public hearing was held before the City Planning Commission at which time the Commission recommended that if the property owners met seven additional conditions then the application should be approved.
On April 11, 1971 the City Council, accepting the recommendation of the Commission, required the owners to meet the seven additional provisos and tentatively approved the application, subject to those provisos, as M.C.S. Ordinance 4536. On April 19, 1971, Mayor Landrieu signed that Ordinance including the additional seven conditions. The ordinance additionally provided for a delayed effective date, due to the tentative nature of its approval:
“That this ordinance shall be effective only after all of the provisos listed in the report of the City Planning Commission, dated February 4, 1971 have been fulfilled and no building permits shall be issued until final adoption of this ordinance.” (emphasis added).
Under our theory of government, the government only exists because of its “compact” or contract with the people. See: U.S. Constitution, Amendment IX, Corwin, “The ‘Higher Law’ Background of American Constitutional Law” 42 Harv.L. Rev. 149; Remarks of James Madison introducing the Bill of Rights in the House of Representatives, June 8, 1789, in 2 Schwartz, The Bill of Rights: A Documentary History 1029 (1971). Louisiana Constitution of 1974 Article 1 Section 24. Both under the compact and under both constitutions a separation of powers is created and a limitation upon those powers exists. U.S. Constitution Article I Section 1, Article II Section 1, Article III Section 1; Louisiana Constitution of 1974, Article II Section 1, Article II Section 2. While a legislative body may appoint groups to study, write, recommend, and report to it, the body cannot delegate “the power to make laws.” The actual legislative power — the power to make laws — is more than a power, it is a non-delegable duty. See: Springer v. Government of Phillipine Islands, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845 (1928); State ex rel. Guste v. Legislative Budget, 347 So.2d 160 (La., 1977). Thus the “final adoption of this ordinance” can only be effected by exercise of the exclusive legislative power of the Council. The legislative power exclusively vested in Council can no more be delegated than this Court could take it upon itself to appoint twelve people to decide all cases and then take a twelve month vacation. While the Council may, on occasion, merely “rubber-stamp” recommended ordinances, the power to decide to accept or reject those recommendations lies solely in the Council. Even the Council itself cannot violate its constitutionally non-delegible duty “to make laws” *90 and thus breach the fiduciary duty imposed by the compact.
At the time that M.C.S. 4536 was “passed”, the area was largely undeveloped. Within the next ten years, however, the area was rapidly developed and the subdivisions Tall Timbers, Aurora, Bocage, and Park Timbers were built. Approximately ten years after No. 4536, new developers executed an option on the Bynum-McCloud property. The managing partner testified that before the group executed the option they were already aware of the RD-2 zoning (which precluded use as apartments) and the seven conditions. The new developer did not comply with all of the seven provisos, but did, nonetheless obtain building permits, in direct violation of the delayed effective date provision of the ordinance and without ever obtaining final approval of the ordinance. He then proceeded to construct not townhouses, but federally-subsidized apartments.
In Cross v. City of New Orleans, 446 So.2d 1253 (La.App. 4th, 1984), writ denied 449 So.2d 1359 (La.,1984), this court approved the revocation of all permits issued to a good-faith renovator and operator of a youth hostel where the City had issued permits in error due to the plaintiffs lack of a few parking spaces. In essence, Steven Cross, who was totally in good faith, lost his business and livelihood over a few parking spaces.
In contrast, the developer in the instant case not only knew of the zoning restrictions on the property prior to expending one dime, but also consciously and intentionally decided that he would build the structures in defiance of the ordinance and that he would not take any steps to obtain proper zoning classification for his project:
“Q. Well, you are familiar with the zoning ordinance of the City of New Orleans prior to this project?
A. I think as a developer I am, yes.
Q. So you are a knowledgeable developer?
A. I would think so.
Q. And you made a conscious decision not to have this project submitted to any sort of public hearing before you went forward and made a final site plan or obtained permits?
A. Yes. (Tr. p. 257).

A. At the time it didn’t make any difference to me because as far as I was concerned it was there. See, there was no advantage to me to use the RPC because I had to go to public hearing to build it, as well as if I had tried to develop the property in some other manner I would not have been issued a permit, you can’t remove the RPC without going back through the same process.” (Tr. p. 265).
In the instant case, the developer is clearly in bad faith by his own admission. We find that the trial court’s remedy is clearly supported by the evidence and testimony present and is, in fact, somewhat mild under the circumstances.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.
WARD, J., and SAMUEL, J., Pro Tem. concurs with written reasons.