446 So.2d 1253 (1984)
Steven M. CROSS
v.
CITY OF NEW ORLEANS, Department of Safety and Permits and Board of Zoning Adjustments.
No. CA-0588.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
Rehearing Denied March 21, 1984.
Writ Denied May 4, 1984.
P. Fred Siegel, New Orleans, for plaintiff-appellant.
Salvador Anzelmo, City Atty., Karen Milner, Asst. City Atty., New Orleans, for defendant-appellee.
John H. Ryan, New Orleans, for intervenors-appellees.
Before GARRISON, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal from a trial court judgment affirming the New Orleans Board of Zoning Adjustments' decision to deny a variance to Steven M. Cross, plaintiff. We affirm.
In February 1981, plaintiff applied for an occupational license to operate a youth hostel at 2253 Carondelet Street, New Orleans. *1254 The following month, the Department of Safety and Permits inspected the premises and granted a license to operate a rooming house. Plaintiff then converted seven of the building's nine apartments into a hostel with ten sleeping rooms accommodating 47 guests.
In September, 1981, the Department of Safety and Permits sent plaintiff a Zoning Law Violation Notice informing him that he lacked the required number of off-street parking spaces for the hostel. Plaintiff applied to the Board of Zoning Adjustments (Board) for a variance waiving the requirement of additional spaces. After a hearing upon due notice, the Board denied the variance. Plaintiff applied to the trial court for a writ of certiorari, which was denied without reasons on June 27, 1982. Plaintiff's suspensive appeal of that judgment is based upon two contentions.
First, plaintiff asserts that in reliance upon the occupational license granted him in March, 1981, he expended considerable time and money in converting the building to a youth hostel before he was notified, six months later, of a zoning violation. Plaintiff contends that the Department of Safety and Permits' failure to call attention to the zoning violation during the licensing process created a hardship which merits the granting of a variance.
Second, plaintiff argues that evidence presented clearly demonstrates that additional parking spaces would not be utilized by hostel guests. Plaintiff contends that the Board erred in refusing the variance in light of that evidence, and that the trial court committed manifest error in affirming the Board's decision.
ISSUANCE OF THE LICENCE
The plaintiff in Nassau Realty Co. v. City of New Orleans, 221 So.2d 327 (La. App. 4th Cir.1969), had begun construction on his house when the Department of Safety and Permits ordered the work stopped because it had issued the permit erroneously, the lot being smaller than zoning ordinances permitted. The trial court affirmed the Board's denial of a variance, stating, "[t]he mere fact that a building permit was issued in error and contrary to the laws of the City does not vest an irrevocable right to proceed under that permit contrary to subsequent action cancelling the permission previously granted." At 330. This court, affirming, noted:
If plaintiff has sustained a loss and has been subjected to undue hardship through no fault of its own but as a result of the Director of the Department of Safety and Permits having erroneously issued a permit upon which it relied, it may have a just grievance against that Department. However, we express no opinion with respect to that aspect of the case. Whatever remedy it might have, however, does not lie in any action which will merely pass the hardship on to its neighbors...
At 330-331.
The plaintiff in Dunn v. Parish of Jefferson, 256 So.2d 664 (La.App. 4th Cir.1972) asserted she had a vested right to her permit when the Jefferson Parish Council informed plaintiff, after she had installed her mobile home permanently on her lot, that it had "changed its mind" and was revoking the permit authorizing the home. This court accepted plaintiff's argument specifically because in that case "there was no error in fact or law ... which induced the issuance of the permit ..." At 667. At the same time, we reconfirmed the principle of law enunciated in Nassau, supra, that a governing authority unlawfully issuing a building permit as a result of error or a mistake in fact or law has a right to cancel that permit.
The plaintiffs in Pailet v. City of New Orleans, Department of Safety and Permits, 433 So.2d 1091 (La.App. 4th Cir.1983), spent ten months renovating a four-family dwelling before the Department of Safety and Permits discovered that the property had earlier lost its nonconforming status and thus had been erroneously licensed in violation of zoning laws limiting the neighborhood to single and double-family dwellings. This court again considered Dunn, supra, and reiterated, "[t]he instant case is clearly distinguishable because the permit *1255 for the renovations was improperly issued." At 1095. This court concluded, "[w]e hold that Dr. and Mrs. Pailet have not acquired a vested right in the erroneously issued building permit; their reliance on the permit was unjustified, and neighbors and property owners should not suffer because an employee of the City erroneously issued a permit." At 1096.
Steven M. Cross's permit was erroneously issued despite the fact that the premises lacked the number of off-street parking spaces required of a rooming house under City zoning ordinances. Legal precedent clearly establishes the Board's right to revoke that permit.
Mr. May of the Department of Safety and Permits admitted at the Board hearing that the inspector responsible for plaintiff's licensing erred in failing to follow normal Department procedure of ascertaining compliance with all zoning and building code requirements before approving an application for an occupational license. Perhaps plaintiff may have some recourse against the Department for the fault of its employee. Plaintiff's neighbors, however, should not be deprived of the benefits and protection of their zoning laws because of the oversights of their City's employees.
STRENGTH OF THE EVIDENCE
This court repeatedly has held that a prima facie presumption of validity attaches to the acts of the Board of Zoning Adjustments. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing by the appellant or relator that the Board was arbitrary and capricious or abused its discretion. Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977), writ ref'd., 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770 (1978); Roy v. Kurtz, 357 So.2d 1354 (La.App. 4th Cir.1978); State ex rel Maple Area Residents v. Board of Zoning Adjustments, 365 So.2d 891 (La.App. 4th Cir.1978). With this standard in mind, we have reviewed the evidence presented by the parties.
The Carondelet property has two off-street parking spaces and is entitled to nine on-street spaces as a nine apartment building constructed under the old zoning laws. Plaintiff argues that the additional parking spaces required under the zoning laws will not be used, and that in fact, the change to a youth hostel has resulted in less on-street parking than before. To support his argument that very few of the hostel's patrons bring automobiles with them, plaintiff hired an independent research firm to analyze the parking situation. After questioning 95% of the hostel guests over a four day period in mid-October, 1981, the firm concluded that the guests had used no more than four on-street parking spaces on any day.
Appellees are a group of plaintiff's neighbors who intervened in the suit against the Board at the trial level. They assert that plaintiff's brief study cannot stand up against the testimony of neighbors familiar with the situation year-round. Appellees testified to increased parking congestion which at times necessitated the towing of vehicles blocking their driveways. They alleged that the increased congestion after the opening of the hostel was especially marked during popular tourist months, and discredited the probative value of a study carried out in the less popular month of October. Appellees conclude that the requirements for variance were not met, as the evidence clearly establishes that the hostel, with its transient occupancy, would significantly alter the neighborhood's residential character, and that the increased vehicular congestion caused by the hostel would be detrimental and injurious to the surrounding properties. (Comprehensive Zoning Ordinance of the City of New Orleans, Art. 15, Section 2.3(1)(e & h).
Plaintiff asserts that his hostel, as one of a respected international association, attracts only upstanding young persons. He adds that the very theory of travel of the organization shuns the use of automobiles. All this may be true. Once granted, however, a waiver of zoning requirements would remain with these premises as long as they continued as a rooming house. Were the clientele to become less *1256 upstanding and more car-conscious, this would be a burden the neighborhood would have to bear. Were the building sold and its operations to degenerate, the neighborhood would be forced to endure this, having granted the variance that legitimated the property's operation as a rooming house. Based upon the arguments and evidence presented to the Board and trial court, we cannot find an abuse of discretion.
For the foregoing reasons, the decision of the trial court is affirmed.
AFFIRMED.
GARRISON, J., dissents.
GARRISON, Judge, dissenting.
I respectfully dissent in the following particulars.
This is an appeal from a judgment of the district court, denying plaintiff's application for review and reversal of the actions of the City Board of Zoning Adjustment in denying a variance. From that judgment, plaintiff appeals.
In February 1981 the plaintiff, Steven M. Cross, applied for an occupational license to operate a youth hostel at 2253-2255 Carondelet Street in New Orleans. The Department of Safety and Permits examined the application and decided to treat it as an application for licensing for a rooming house. The City inspected the premises, and granted the license in March 1981. Upon receiving the license and approval of the City, plaintiff subsequently converted the premises in question, which had formerly been a 9-unit apartment building, into a hostel and two apartments.
Six months after the grant of the license, or September 1981, plaintiff received a Zoning Law Violation notice informing him that the type of operation he was running required more off-street parking spaces than he was able to provide. In response thereto, plaintiff applied for a variance under the City's Comprehensive Zoning Ordinance in the form of a waiver of eight off-street parking spaces, by appealing the Department's determination to the Board of Zoning Adjustments (Board). After a hearing on the matter, the Board denied plaintiff's application, concluding that the requested variance would have an adverse impact on the neighborhood.
Plaintiff applied to the district court for review of the decision and directed a rule to the Board and the Department of Safety and Permits to transmit its records in the matter to the court. At that time several property owners in the neighborhood intervened in the proceeding. After the trial (by rule), the court rendered judgment in June 1982, without assigning reasons, denying the application. Plaintiff has appealed suspensively.
Plaintiff alleges on appeal that the denial of the requested variance was arbitrary and capricious, and was manifestly erroneous in light of the probative evidence adduced. I agree. Plaintiff's license constitutes prima facie evidence of the City's approval of plaintiff's application and prima facie evidence that all requirements for the proposed operation have been checked by the City and successfully met. Plaintiff has a right to rely upon the City's granting of its license, inasmuch as it is the duty of the City to check for potential violations and to inform the applicant of those potential violations prior to the issuance of the license. Absent # 1 a fraudulent application or # 2 a later developing situation not ascertainable upon inspection of the application prior to granting of the license, the City cannot revoke its approval of the plaintiff's operation. To hold otherwise would be to find that the City's license is nothing but a worthless piece of paper.
It is noted that several neighbors objected to the zoning variance application arguing that property values declined and crime increased as a result of the hostel. No comparables of sales were introduced or other evidence that property values had in fact declined. Likewise, the "evidence" of crime increase was not only weak and insubstantial, but also failed to prove correlation between the crime increase and the operation of the hostel. It is noted that crime has increased citywide and that the *1257 area in question is a relatively high-crime area within the Metropolitan Area. Accordingly, these make-weight arguments are without merit and deserve no further discussion.
Lastly, I note that the neighbors argue that the operation of the hostel increases parking problems for the residents. This bogus argument is blatantly unsupported by the record. The majority opinion questions the timing of the study "in the less popular month of October." I note that the two biggest tourism months in New Orleans are in fact April and October. The only evidence of parking was introduced by plaintiff who produced a marketing study indicating ample parking space on the street despite a calculated campaign by the neighbors of parking their vehicles on the street in order to aid to the congestion:
"The 2200 block of Carondelet was observed each evening for parking space availability. Space available each evening was as follows:

10/14 16 Vacant parking spots
10/15 24 Vacant parking spots
10/16 23 Vacant parking spots
10/17 13 Vacant parking spots

The study further indicated that most hostel guests do not have vehicles:
"Transportation:
Hostel guests come to New Orleans by a variety of means. Most arrive in New Orleans by bus. Cars, planes and hitchhiking were the next most popular modes of transportation.

 TABLE 1
Hostelers Come To New Orleans By:
 10/14 10/15 10/16 10/17 Total
 (28) (11) (13) (3) (55)
 ----- ----- ----- ----- -----
Car 6 2 -- -- 8
Bus 11 6 9 1 27
Plane 6 1 1 -- 8
Ship -- -- -- -- --
Train -- -- 1 -- 1
Other* 5 2 2 2 11

Hostel guests come to the hostel itself predominantly by trolley. Automobiles were the secondary means of arrival.

 TABLE 2
Hostelers Come To Hostel Itself By:
 10/14 10/15 10/16 10/17 Total
 (28) (12)** (13)** (3) (55)
 ----- ----- ----- ----- -----
Car 7 2 -- -- 9
Bus -- 2 -- -- 2
Trolley 12 7 7 3 29
Walked 4 2 3 -- 9
Cab 2 -- 3 -- 5
Other 3 1 -- -- 4
*most hitchhiked
**multiple responses (bus/walked included)

Of those arriving by car, 2 on October 14 and 1 on the 15th were dropped off by friends. They did not have their own cars and did not require parking space. On October 14, 2 people arrived in the same vehicle. Parking needs are assessed as those of all guests during their stay at the hostel. The maximum number of vehicles parked any evening during the study period was 4 (this included 3 cars and 1 motorcycle), while the average registration was 39 guests. This represents approximately 1 vehicle per 10 registered guests (with a range from 1 vehicle per 8 guests to 1 per 21 guests).

 TABLE 3
 Total
 Total Respondents Vehicles
 Total Guests With Old And
Date Day Guests Interviewed Vehicles New Guests
---- --- ------ ----------- ----------- -----------
10/14 Wed. 32 28 4 4
10/15 Thurs. 35 10 1 4
10/16 Fri. 38 13 0 3
10/17 Sat. 42 3 0 2
Total Differenct Guests 58
Total Responding To Survey 56 (95%)"
 Exhibit P-10

The neighbor's proof generally consisted of statements to the effect that "parking is worse" via a form letter. No attempt was made to link a parking problem with the hostel. We note that there are a number of commercial operations in the immediate area, including a health clinic, a synagogue, and a hotel which may be the cause of any parking problems, as it is obvious that the hostel is not such a cause. The "evidence" provided by the neighbors failed to overcome *1258 the prima facie evidence of plaintiff's existing license. Accordingly, the Board acted arbitrarily, capriciously, and unreasonably in failing to grant the variance.
For the reasons discussed, I would reverse the judgment of the district court and grant judgment issuing a mandamus to the Board of Zoning Adjustments as follows:
"IT IS ORDERED, ADJUDGED, AND DECREED that a writ of mandamus be and hereby is issued to the Board of Zoning Adjustments via its Chairman, the Honorable Claude J. Kelly, Jr. ordering the Board to issue to Steven Cross the variance requested."