ARMSTRONG, Judge.
Defendants Eric Rasmussen, Nick S. Kamo, and Frank Carracci are local businessmen operating an enterprise at 333 Bourbon Street in New Orleans, Louisiana. Rasmussen sought and obtained a “retail business” occupational license from the City of New Orleans on February 15, 1985 in order to run a “sales theater” at that location.
In April of 1985, and thereafter, Rasmussen met with various zoning officials of the City of New Orleans in connection with his plans to open a “Family Entertainment Center” at 333 Bourbon Street. He formally applied for an occupational license for such use in May of 1985, an application that was subsequently denied.
In August of 1985 Rasmussen sought and obtained an occupational license to lease or buy coin-operated machines at 730 Pierce Street. Armed with this permit he obtained 44 “claw machine” permits and 6 video machine licenses. Rasmussen opened his “Family Entertainment Center” in September of 1985 at the Bourbon Street Location.
On March 14, 1986, the City of New Orleans obtained an injunction ordering the defendants to cease operation of an amusement arcade or amusement place at 333 Bourbon Street in violation of the Comprehensive Zoning Law. The district court ruled that Rasmussen’s “operation is in violation of the Code of Articles that list very specifically the permitted uses in the Vieux Carre Entertainment District.” And further that “this is not a retail store or shop but it is, in fact, a game arcade and it violates the city zoning laws.”
Defendants’ arguments on appeal are that the zoning ordinance fails to meet minimum standards for fairness and justice and is just not applicable to these facts.
I
Defendants contend that the “plain meaning” of the ordinance makes it applicable only in circumstances where a change of exterior appearance is contemplated. Otherwise the approval of the Vieux Carre Commission is not mandated and the enumerated list of permitted uses does not apply.
City of New Orleans, Ordinance No. 4264 M.S.C. Article 5, Section 21A, provides a series of conditions and safeguards to preserve the area in order to attract and serve visitors and local residents. A special permit from the Vieux Carre Commission is only required when any change in exterior appearance is contemplated.[1] It is not al *15 leged that Rasmussen altered the exterior of his property. In order for Rasmussen to hold a valid occupancy permit issued by the Director of Safety and Permits, the use of his property must be within the list of specifically listed purposes. Section 21A.2(d) states:
“d. The value of the Vieux Carre as a place of unique interest and character shall not be impaired. A building or land shall be used only for the following specifically listed purposes, subject to the performance standards of Article 5, Section 17, with the specific exclusion and prohibition of time share buildings and/or transient vacation rentals:
1. Standard restaurants and cafeteria restaurants but not drive-in or fast food restaurants.
2. Museums.
3. Antique and art shops.
4. Bakeries occupying not more than 2,000 square feet of floor area and provided all products produced on the premises are sold at retail on the premises.
5. Delicatessens.
6. Flower shops.
7. Photographers and artist studios.
8. Small retail stores and shops occupying a floor area of not more than 2,000 square feet.
9. Single-family dwellings.
10. Two-family dwellings.
11. Multiple-family dwellings.
12. Gas distribution mains and gas regulator stations.
13. Underground electric utility distribution facilities and meters and service lines.
14. Underground telephone and communications lines and related facilities.
15. Underground sewerage lift or pumping stations, when above ground entrance hatches are set back a minimum of 20 feet from front and rear property lines and a minimum of 6 feet from side property lines.
16. Water distribution systems, meters, sanitary and storm water sewerage systems and related appurtenances but not including lift and pumping stations or water towers.
17. Public telephones (boot or otherwise) when the design and location is approved by the Vieux Garre Commission and the Department of Utilities and fund to comply with the following requirements:
a. Such telephones shall be illuminated for night use and situted in such a manner as to avoid the creation of a potential hazard for adjacent streets, readways, or driveways.
b. Such telephones do not obstruct any public sidewalk or pedestrian way.
c. When covered, such public telephones must have the approval of the Vieux carre Commission.
18. Underground cable communication system cables, amplifiers, and related facilities but excluding distribution or switching centers and cablecasting studios.
19. Nightclubs.” (emphasis added).[2]
Not included in this list is the use of such space for a video arcade.
The City of New Orleans offered the City Planning Commission’s staff report as proof of the lawmaker’s intent to delete video arcades from the list of permitted uses. The report speaks to perpetuating *16 historical uses such as jazz clubs and restaurants, the non-compatibility of amusement places with the Bourbon Street Pedestrian Mall and preserving the “toute ensemble” of the Vieux Carre. The report refers to “penny arcades” already in existence along Bourbon Street and explains that they are
“noisy operations with the “clatter,” “hums,” “pops,” “dings,” “peep” and electronic sounds emitting from the various game machines. Some of these arcades have several entrance doors that remain open to the Bourbon Street Mall and project the noise into the street where it is not compatible to the jazz music that is usually heard while walking along the mall.”
We find that the district court was correct in its reading of the ordinance. The ordinance specifically excludes the use of space for a video arcade.
II
Defendants argue that there are no exclusive permitted uses thus placing the discretion to issue occupancy permits in the Director of Safety and Permits without providing the constitutionally mandated guidelines. They rely on Summerell v. Phillips, 282 So.2d 450 (La.1973) to allege that the ordinance is unconstitutionally vague.
First, defendants are incorrect in their presumption that the ordinance does not specify permitted uses. 4264 MCS Article 5, Section 21A.2(d). Secondly, Summerell has no application to these facts. In Summerell full discretion was given to the zoning authority to vary the classifications in the special district there set up, but no criteria was provided for the exercise of that power. Here, there is a specific list of permitted uses. It is the role of the City Zoning Administrator to determine whether a particular use is within the permitted uses of the ordinance.
Defendants believe that they should have been afforded the opportunity to contest the Department of Safety and Permits decision that their enterprise was an arcade. We agree with the district court, that it was not error for the City of New Orleans to determine that a fun arcade is not a retail sales operation.
Rasmussen characterizes his enterprise as a retail store operation because he insists that customers can purchase merchandise without playing the machines. Joan Buttigig with The City of New Orleans, Department of Finance, Bureau of Revenue, described a retail sales business as one in which customers pay money in return for some tangible personal property. Rasmussen’s business involves a number of arcade machines, 3 “claw machines”, 2 video machines and 19-20 merchandising machines which are machines that offer games of skill for money and enables the player to win tickets or tokens that are redeemable for merchandise. Rasmussen estimated that his merchandise enterprise accounts for 35-50% of his business. In describing the use made of Rasmussen’s property, Paul May, Zoning Administrator for the City of New Orleans, stated
"... its like a Coney Island or Pon-chartrain Beach atmosphere. On the left side of the room there are three booths like fair booths set up for games. One consist of a dart throw, one has something to do with a pool table or a cue stick and pool balls. On the other side of the room there’s a photograph thing like four photographs for a dollar or whatever, and a game booth with dollar bills rotating through an air circulation system. And at one point in the day you have some kind of bonus prize and somebody has to go in there and grab as much money as they can out of the booth. In the middle of the room you have three machines. Two of them are coin operated machines, quarters are needed for necessity of operation. And I believe they are what you call bulldozers and you stick in a quarter through a little mechanical arm to try to place it so when the bulldozer comes across, it would push the coins down into the jackpot slot or whatever and you receive something that way. The other machine is a big claw machine operated also by a quarter and a mechanical arm in which you have a *17 chance to pick up stuffed animal type prizes. Across the back of the room is like a cashier or a prize booth where you exchange the tokens from the machines, and then as you go around to your right there is another smaller room where they have additional coin operated machines or token operated machines, operated in the same manner as the bulldozer pushing the prizes or the additional tokens into the slots.” He explained that the premises were located roughly in the middle of the block with two large french doors that open out onto the street, accessible to the public, and they remain open during the hours of operation.
We are of the opinion that this type of establishment clearly can be classified as an arcade and is just the type of use that the city wished to discourage. The determination is reasonable and well within the City’s police power. See: Furr v. Mayor and City Council of Baker, 408 So.2d 248 (La 1981). A zoning ordinance which limits an area to particular uses is a valid and constitutional exercise of the city’s police power.
Ill
Defendants maintain that the ordinance is unconstitutional if read to exclude their enterprise. They insist that the City Zoning Administrator’s judgment is arbitrary and capricious to maintain that games of skill are not entertainment.
A party attacking an ordinance bears the burden of proving that it is unconstitutional or that it is applied in an arbitrary and discriminatory manner. Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982) As previously discussed an ordinance which creates zones for exclusive uses is constitutional. Nor is it arbitrary and capricious for the City Zoning Administrator to apply the ordinance to exclude defendant’s enterprise. At trial Rasmussen took contention with the fact that the Department of Safety and Permits has a policy in allowing three video machines per establishment in the VCE District. Rasmussen can not rely on this departmental policy to argue that enforcement of the ordinance as to him is arbitrary and capricious. By his own testimony, he admits to having 25 or more video machines on his premises. The City has sufficient justification, as expressed in City of New Orleans, Ordinance No. 4264 M.S.C. Article 5, Section 21A, to exclude fun arcades from the permitted uses for space in the Vieux Carre Entertainment District. Without a clear abuse of discretion or an excessive abuse of power this court can not substitute its judgment for that of the City. Hibernia National Bank v. City of New Orleans, 455 So.2d 1239 (La.App. 4th Cir.1984), writ denied 459 So.2d 542 (La.1984).
For the foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.

. 21A.2 Permitted Uses. No occupancy permit shall be issued by the *15 Director of Safety and Permits for any change in the use of any existing buildings until and unless a special permit shall have been issued by the Vieux Carre Commission, except that where no change in exterior appearance is contemplated, such permit by the Vieux Carre Commission shall not be required. Where any change in exterior appearance is contemplated, the Vieux Carre’ Commission shall hold a hearing, and if it approves such change, it shall issue a special permit to continue the same use, or for any other use not otherwise prohibited in this District, subject to the following safeguards ... (emphasis added)

. The language quoted from this ordinance is current and has not been revised since 1986. Formerly section 21A.2(d) ended after the word impaired and the language assigning the specifically listed purposes for an occupancy permit followed in a separate paragraph. Because this ordinance refers to two separate permits the ordinance loses clarity in its present form.