CHARLES R. JONES, Judge.
_jjThe Appellant, Vernon Williams, appeals the judgment of the Thirty-Fourth Judicial District Court dismissing his Application for Writ of Mandamus for failure to resume a nonconforming use within six months of its discontinuance. For the reasons set forth below, we reverse.
Vernon Williams (“Mr.Williams”) owned and operated V.J.’s Hollywood Lounge (“V.J.’s”) in St. Bernard Parish (“SBP”) until March 15, 2005. V.J.’s is located in a C-l neighborhood commercial zoning district. When V.J.’s began operating, bars and lounges were permitted to conduct business in C-l neighborhood commercial zoning districts. However, SBP changed its’ zoning laws requiring bars and lounges to be located in C-3 zoning districts. V.J.’s was grandfathered in and thus, was permitted to continue operating in a C-l commercial zoning district. Pursuant to paragraph 9 of Section 22-8 of the SBP Code of Ordinances, V.J.’s would have to obtain a zoning change to legally resume operations if it ceased to operate for six months.
On March 15, 2005, SBP suspended Mr. Williams’ liquor permits for six months, pursuant to Chapter 3, Section 3-26(f) of the SBP Code of Ordinances. Mr. Williams timely instituted the appeals process. Approximately three years |2later, this Court reversed the suspension of Mr. Williams’ permits citing due process violations. See Williams v. Parish of St. Bernard, 2007-1316 (La.App. 4 Cir. 5/28/08), 984 So.2d 937.
Pending the resolution of the initial appeal, Hurricane Katrina struck and destroyed V.J.’s. After this Court’s judgment *523 reversing the suspension of the liquor permits became final, Mr. Williams began restoring VJ.’s. SBP issued a “cease and desist” order for illegal construction. Mr. Williams applied for and was granted a temporary restraining order enjoining SBP from preventing the repair and restoration of V.J.’s based on any alleged loss of nonconforming use.
Mr. Williams subsequently applied for a building permit for an existing structure to be restored as a neighborhood bar. The permit was issued on October 29, 2008, and it indicated that it was valid for six months. Mr. Williams completed the restoration of the building and attempted to apply for a new alcoholic beverage permit with the SBP Alcoholic Beverage and Bingo Department (ABBD) on May 27, 2009. The ABBD, however, would not accept an alcoholic beverage permit application without a zoning approval form. A zoning approval form may be obtained after a zoning compliance application form is submitted to the SBP Office of Planning and Zoning. On the same day, an attorney for SBP informed counsel for Mr. Williams that Mr. Williams, doing business as V.J.’s Hollywood Lounge, lost his nonconforming use due to voluntary abandonment. This adverse determination precluded the scheduling of subsequently required building inspections by the Department of Community Development. Furthermore, an alcoholic beverage permit application would not be accepted without a zoning approval form.
_JjMr. Williams filed an Application for Writ of Mandamus requesting SBP be ordered to issue all necessary permits and licenses required for the reconstruction of V.J.’s, and the resumption of operations as a legal nonconforming use as a neighborhood bar. The Thirty-Fourth Judicial District Court dismissed Mr. Williams’ claims finding that Mr. Williams failed to resume his nonconforming use within six months of its discontinuance.
Mr. Williams appeals the decision of the district court arguing the district court erred in holding that the appellant only had six months within which to restore a nonconforming building following a disaster. He also argues the district court erred in failing to apply Louisiana Revised Statute 38:4882, which was enacted to apply to nonconforming uses damaged by Hurricanes Katrina and Rita.
The issues in this case involve the interpretation of paragraphs nine and six of Section 22-8 of the SBP Code of Ordinances, and Louisiana Revised Statute 33:4882. The proper interpretation of a statute is a question of law and is, thus, reviewed by this Court under a de novo standard of review. Oliver v. Allstate Ins. Co., 2007-1434 (La.App. 4 Cir. 8/6/08), 991 So.2d 566, 568 (citing Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045).
In his first assignment of error, Mr. Williams argues that the district court erred in holding that he only had six months from the date the decision of this Court became final to restore VJ.’s, a nonconforming building, following a disaster. SBP argues that Mr. Williams is confusing the requirements for restoring a nonconforming building with those associated with a nonconforming use of property.
|4The Louisiana Supreme Court described a nonconforming use of property as “[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated ...” Redfearn v. Creppel, 455 So.2d 1356, 1358 (La. *524 1984). Furthermore, this Court has explained that:
A legal nonconforming use is “designed to protect those uses which were established before the enactment of a restrictive zoning regulation.” Since a nonconforming use is inconsistent with the purpose of zoning ordinances, decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the nonconforming use. However, this principle should [not] be confused with the principle that a zoning ordinance, being in derogation of the rights of private ownership, must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property.
Cordes v. Bd. of Zoning Adjustments, 2009-0976, p. 10 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 510-11 (citations omitted). A nonconforming building, on the other hand, is a structure that predates the current zoning ordinance and fails to meet the proper floor area, open space, and setback requirements. Cordes, 2009-0976, p. 12, 31 So.3d at 512.
There are two relevant provisions in Section 22-8 of the SBP Code of Ordinances, paragraphs nine and six. Paragraph 9 of Section 22-8, entitled “Discontinuance,” provides:
Discontinuance. Whenever a building or land used in whole or in part for a nonconforming purpose becomes and remains vacant for a continuous period of six (6) months, or when the operations normally carried on in such a building or on such land have been discontinued for a period of six (6) months, such nonconforming use 1 Bshall not thereafter be reestablished and any future use shall be in conformity with the provisions of this chapter.
The restoration of nonconforming buildings after an Act of God, natural disaster, or fire is governed by paragraph 6 of Section 22-8, which states:
Restoration. A legally nonconforming building destroyed by fire, storms, or other acts of God or a public enemy may be repaired or rebuilt, provided the restoration is accomplished with no increase in cubical content and no increase in floor area over the building existing immediately prior to damage.
The section under which both paragraphs appear is entitled “Nonconforming Uses.” Mr. Williams’ use of the premises as a bar in a C-l neighborhood commercial zoning district constitutes a nonconforming use because it lawfully existed prior to the enactment of the zoning ordinance requiring all bars and lounges to be located in C-3 zoning districts. Additionally, V.J.’s was maintained after the effective date of the zoning ordinance change although it did not comply with the use restrictions applicable to the area in which it was situated. Thus, paragraph 9 of Section 22-8 is applicable.
The district court concluded Mr. Williams lost his nonconforming use status because he failed to resume his nonconforming use within six months of its discontinuance in violation of paragraph 9 of Section 22-8 of the SBP Code of Ordinances. The district court concluded the fact that the bar was destroyed by Hurricane Katrina, while unfortunate, was legally irrelevant. The district court relied on this Court’s determination that the language in Fuller v. City of New Orleans, 311 So.2d 466 (La.App. 4th Cir.1975)[1], did *525 not operate to add the | ^requirement that the abandonment be voluntary to an ordinance concerned with the termination of nonconforming use. See Jones v. Cusimano, 524 So.2d 172, 174 (La.App. 4th Cir.1988),
In Jones, this Court interpreted Article 12, Section 2 of the Comprehensive Zoning Law of the City of New Orleans of 1970, which provided, in pertinent part:
Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any nonconforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended nonconforming use shall be taken into consideration in interpreting and construing the word “vacant” as used in this section.
This Court noted that the prevailing law in American jurisdictions, absent a specific provision in the municipal zoning ordinance, requires a voluntary abandonment before a nonconforming use may be lost. Jones, 524 So.2d at 174. The enactment of a specific ordinance regarding the loss of a nonconforming use, however, displaces the general law of zoning and exists independently from it. Id. This Court held that the involuntariness of the vacancy was not legally material because Article 12, Section 2 of the Comprehensive Zoning Law of the City of New Orleans of 1970 specifically prohibited the consideration of voluntariness of the vacancy when determining the loss of a nonconforming use. Id.
In the matter sub judice, the district court misinterpreted this jurisprudence as requiring that the “voluntariness” requirement of the cessation of use be explicitly written in the ordinance to be a consideration. When analyzing paragraph 9 of Section 22-8 of the SBP Code of Ordinances, the district court wrote, “[t]he ordinance as written does not require that the cessation of use be voluntary, intentional, or within the control of the owner or operator of the nonconforming premises.” As previously stated, the prevailing law in American [jurisdiction requires a voluntary abandonment before a nonconforming use may be lost unless there is a specific provision in the municipal zoning ordinance prohibiting the consideration of voluntariness. See Jones, 524 So.2d at 174.
As noted by the district court, paragraph 9 of Section 22-8 of the SBP Code of Ordinances does not require that the cessation of use be voluntary, intentional, or within the control of the owner or the operator of the premises. Nor does it explicitly prohibit the consideration of such factors as did Article 12, Section 2 of the Comprehensive Zoning Law of the City of New Orleans. Accordingly, the district court erred in concluding that Mr. Williams lost his nonconforming use status by failing to resume operations within six (6) months of discontinuance when the discontinuance arose from damage caused by Hurricane Katrina, an involuntary event.
The remaining question is whether paragraph 6 of Section 22-8 of the SBP Code of Ordinances applies to buildings used in whole or in part for a nonconforming purpose or if it merely applies to nonconforming buildings. Additionally, if paragraph 6 of Section 22-8 of the SBP Code of Ordinances is applicable, what is the extent of applicability?
Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily .the *526 search for the legislature’s intent. The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. 1 sUnder our longstanding rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it. In addition, courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.
La. Mun. Ass’n v. State, 2004-0227, pp. 35-36 (La.1/19/05), 893 So.2d 809, 836-37 (citations omitted).
As previously noted, paragraph 6 appears in Section 22-8 of the SBP Code of Ordinances, which is entitled “Nonconforming Uses.” Louisiana jurisprudence suggests all paragraphs contained within the section are applicable to buildings being used for a nonconforming purpose. This includes the operation of V. J.’s by Mr. Williams, a nonconforming barroom located in a C — 1 neighborhood commercial zoning district.
Paragraph 6 of Section 22-8 of the SBP Code of Ordinances permits the restoration of a legally nonconforming building destroyed by fire, storms, or other acts of God. The provision does not give time limits for the restoration of the building. Rather, the only limitation is that the restoration of the nonconforming building be accomplished “with no increase in cubical content and no increase in floor area over the building existing" immediately prior to damage.” SBP Code of Ordinances 22-8-6.
The SBP Code of Ordinances is similar to the legislative scheme provided by the Comprehensive Zoning Ordinance (“CZO”) of the City of New Orleans. The New Orleans CZO provides a six month period for abandonment of a 19nonconforming use, and a longer period for the restoration of a nonconforming use following a disaster. CZO Section 13.2.1 provides:
No nonconforming building or portion thereof, or land used in whole or in part for nonconforming purposes, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. The intent of the owner or other person to use a building or land for nonconforming purposes shall not be determinative of whether such building or land was vacant.
CZO Section 13.3.2 provides that an owner whose building has been destroyed has one year within which to obtain a restoration permit and one year to complete the restoration of the building:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of the issuance of the restoration permit unless *527 extensions are approved by the Board of Zoning Adjustments.
Thus, the City of New Orleans provides a nonconforming property owner approximately two years within which to restore property damaged by a disaster. However, the City of New Orleans’ Board of Zoning Adjustment (“BZA”) is authorized to grant additional extensions to the restoration permit beyond the initial two year period. The CZO places no limit as to how many extensions the BZA can grant for a restoration permit.
SBP, like the City of New Orleans, has two time periods applicable to nonconforming properties. Paragraph 9 of Section 22-8 of the SBP Code of Ordinances provides that a building loses it nonconforming use status if it remains vacant for a continuous period of six (6) months. Section 6 of Section 22-8 of the ImSBP Code of Ordinances provides for the restoration of nonconforming buildings that have been destroyed by storms.
Although paragraph 6 does not impose a limit as to how long an owner has to complete the restoration, Mr. Williams argues that it may be read in conjunction ■with SBP Code Section 5-2, which states:
(a) Permits for the construction of residential, commercial, and industrial buildings or structures granted by the police jury are declared valid for a period of one (1) year extending from the date of the granting of such permits.
(b) Upon the expiration of one (1) year from the date of granting of a building permit by the police jury, such permit becomes invalid if construction has not been commenced before expiration of the one (1) year period. Upon expiration of the one (1) year period and where construction has not commenced, renewal of such permits for construction may be granted only upon reapplication therefor. In the event of reapplication, no further charge for the granting of such permit will be made except in the instance materials or changes are made in the original plans such as would require complete reconsideration for approval or rejection. (Emphasis added).
Reading the two SBP Code sections together yields a reasonable time frame for property owners to restore a building used for a nonconforming purpose that was destroyed by a fire, storm, act of God, or public enemy.
The applicability of paragraph 6 of Section 22-8 of the SBP Code of Ordinances is a novel issue before this Court. Considering the plain reading of the zoning ordinance and the interpretation of similar codal provisions, we conclude the district court erred in dismissing the claims of Mr. Williams. Although Mr. Williams discontinued operations for a continuous period of six (6) months, the discontinuance was caused by the destruction of the building by a storm. The destruction of the building triggered paragraph 6 of SBP Code Section 22-8.
|1TA plain reading of paragraph 6 yields an indefinite period of time for the restoration of a nonconforming building such as V.J.’s. Even if paragraph 6 is read in conjunction with SBP Code Section 5-2, Mr. Williams would have one year from the date the building permit was issued to complete restoration. Mr. Williams was issued a building permit on October 29, 2008. Thus, he would have had until October 29, 2009 to complete restoration. Accordingly, the district court erred in holding that Mr. Williams had a total of six months from August 9, 2008, the date this Court’s ruling in the first lawsuit became final, within which to fully restore the building that had been damaged by Hurricane Katrina.
*528 In his second assignment of error, Mr. Williams asserts the district court erred in failing to apply Louisiana Revised Statute 33:4882, which was enacted to apply to nonconforming uses damaged by Hurricanes Katrina and Rita. Specifically, Mr. Williams asserts he should be allowed two years plus six months from August 9, 2008, or until February 9, 2011, within which to complete restoration.
Louisiana Revised Statute 33:4882 provides:
A. Notwithstanding any provision of law or municipal or parish ordinance or resolution to the contrary, the governing authority of any municipality or parish and any agency of any such municipality or parish shall not allow and shall not cause any building or land to lose its nonconforming use status because, during all or part of the period of August 29, 2005, through August 28, 2007, as a result of -damage caused by Hurricane Katrina or Hurricane Rita, it is temporarily vacant or operations normally carried on in such building or on such land have been temporarily discontinued.
B. Notwithstanding the provisions of Subsection A of this Section, the governing authority of any parish having a population in excess of four hundred thousand, based |12on the latest federal decennial census, may by ordinance reduce the time period of August 29, 2005, through August 28, 2007, provided in Subsection A of this Section.
The intent of Act 737 of the 2006 Regular Session was to allow businesses damaged by Hurricanes Katrina and/or Rita a two year period from August 29, 2005, through August 28, 2007, to make repairs without losing their nonconforming use status, thereby requiring businesses to be back in operation by August 28, 2007. Op. Atty. Gen., No. 07-0321 (March 25, 2008), 2008 WL 962042. While the statute gives certain governing authorities the power to reduce the period of time, the converse is not true. Specifically, the statute does not provide for an extension of the designated period to maintain a nonconforming use status while property destroyed by Hurricanes Katrina or Rita is being restored.
“When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La. Civ.Code art. 9. Furthermore, “[t]he words of a law must be given their generally prevailing meaning.” La. Civ.Code art. 11.
The law set forth in Louisiana Revised Statute 33:4882 is clear and unambiguous. It sets forth a specific time frame for businesses to maintain their nonconforming use status without penalty. This is a peremptive time period; thus, it may not be suspended or interrupted. Accordingly, appellants’ argument that he should be allowed two years plus six months from August 9, 2008 based on Louisiana Revised Statute 33:4882 within which to complete restoration is without merit.
hüDECREE
Pursuant to our de novo review, we find the district court erroneously dismissed Mr. Vernon Williams’ application for writ of mandamus requesting the issuance of all necessary permits and licenses required for the reconstruction of a building used for a nonconforming purpose for failure to resume the nonconforming use within six months of discontinuance. Therefore, the judgment of the district court is reversed.
REVERSED.
ARMSTRONG, C:J., Concurs in the Result.

. This Court stated, "[w]hen the use is voluntarily discontinued for a prescribed period of time, the ordinance may prohibit resumption of the nonconforming use. Apparently, most *525 statutes and ordinances require that the user intend to abandon his nonconforming use of the property.” Fuller, 311 So.2d at 468.