ROSEMARY LEDET, Judge.
| ,This is a zoning dispute. Sue Spils-bury and Lynn DiVincent (the “Plaintiffs”) appeal the trial court’s judgment denying the Plaintiffs’ rule to show cause why the decision of the Board of Zoning Adjustments (“BZA”) should not be overruled and reversed. For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
The Plaintiffs co-own a two-family dwelling on 6027/6029 Memphis Street in the Lakeview area of Orleans Parish (the “Duplex”). In 1998, the Plaintiffs inherited the Duplex from their mother. At all pertinent times, they have used the structure as a double. The Duplex is located in the zoning district LRS 1 — Lakeview Single-Family Residential District (“LRS-1”). As a result of the impact of Hurricane Katrina, which made landfall on August 29, 2005, the Duplex flooded.
In 2007, LRS-1 was converted by city ordinance from a two-family dwelling zoning district with a moratorium on new doubles (and duplexes) to a single-family zoning district with a waiver for existing doubles. Cupit v. City of New Orleans ex rel. Bd. of Zoning Adjustments, 12-1708, p. 2 (La.App. 4 Cir. 7/17/13), 120 So.3d 862, 863; See CZO 9A.1.3. After LRS-1 was re-zoned, the Duplex’s use as a two-family dwelling became a non-conforming use.[1]
In August 2006, the Plaintiffs obtained an “emergency” permit to repair their Duplex.[2] Sometime thereafter, the Plaintiffs applied for a Road Home Disaster forgivable grant through the Small Rental Property Program (“SRPP”). The Plaintiffs were approved for a grant called the “incentive option,” under which they were to contract and finance all repairs, and after inspection and approval, they could petition the State for reimbursement. However, in September 2009, the Plaintiffs applied for a grant called the “initiative option,” in which a contractor would be assigned by the State to undertake all repairs. If the Plaintiffs met a rental ceiling guideline for ten years, the grant would be forgiven. In December 2009, the Plaintiffs were approved for the initiative grant.
During early summer of 2010, the Road Home Program notified the Plaintiffs that their contractor assignment could be immi *255 nent. Thus, on July 1, 2010, the Plaintiffs applied for and received a new building permit for “renovation.”[3] However, the Road Home Program did not make a final contractor | ¡¡assignment for the Plaintiffs until over a year later, in November 2011. Further, the Road Home Program did not schedule the Plaintiffs’ loan closing until November 13, 2012, a year from the contractor assignment.
On the morning of the closing, the Plaintiffs and their SRPP contractor went to the Department of Safety and Permits (“DSP”) to obtain a building permit to repair their Duplex. However, they were denied a new permit. The DSP told the Plaintiffs that the Director of the DSP interpreted LRS-1 to halt the restoration of existing doubles in the Lakeview area effective August 16, 2011.
On August 16, 2011, in an inter-office memorandum the former Director of the DSP, Paul May, stated: “Following a review of Art. 9A, Section 9A.1.3.2A of the comprehensive zoning ordinance, the Department of Safety and Permits has determined that the language of the ordinance relative to the renovation of two-family dwellings in the LRS-1 District is unclear.” Thus, Mr. May stated that effective immediately, no permits would be issued for the renovation of an existing two-family dwelling in the LRS-1 District where the intended occupancy is anything other than a single-family dwelling. However, Mr. May stated that permits may be issued for the renovation, expansion, or alteration of occupied two-family dwellings.
After being denied a new permit, the Plaintiffs called the DSP and requested an extension of their 2010 permit, pursuant to ongoing work they performed on the Duplex. On November 20, 2012, the senior building inspector for the DSP, Jerry McRaney, inspected the Duplex. Mr. McRaney determined that no ongoing repairs or renovations were taking place. Mr. McRaney further determined that the Duplex was uninhabitable. Thus, the DSP denied the Plaintiffs’ application for an extension of their 2010 permit.
I/The DSP instructed the Plaintiffs that they had the following two options: (1) make their house a single, and get a permit to repair a single-family dwelling; or (2) appeal the denial to the BZA. Thereafter, the following procedural events occurred:
• On November 30, 2012, the Plaintiffs filed an appeal to the BZA.
• On January 14, 2013, during a hearing [4] before the BZA, the BZA upheld the city’s denial of the Plaintiffs’ permit application to repair their Duplex.[5]
• On February 14, 2013, the Plaintiffs timely[6] filed their petition for a TRO, preliminary and thereafter permanent *256 injunction, for writ of certiorari and judicial review, and for writ of mandamus and appeal in Civil District Court for the Parish of Orleans.
• On May 31, 2013, the Plaintiffs filed a rule to show cause why the decision of the BZA should not be overruled and reversed, and that the DSP be ordered to issue the Plaintiffs a permit to repair their Duplex.
• On June 13, 2013, the City filed its opposition to the Plaintiffs’ rule to show cause.
• On June 21, 2013, the rule was heard and on July 12, 2013, the trial court entered its judgment affirming the BZA’s decision to deny the Plaintiffs a permit to repair their Duplex.
This appeal followed.
DISCUSSION
| ¡¡This court recently summarized the standard for reviewing decisions of the BZA in Ellsworth v. City of New Orleans, 13-0084, p. 6-7 (La.App. 4 Cir. 7/31/13), 120 So.3d 897, 902:
The jurisprudence has recognized that “the decisions of the BZA, while subject to judicial review under La. R.S. 33:4727(e), are subject to a presumption of validity and are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion.” French Quarter Citizens For Preservation of Residential Quality, Inc. v. New Orleans City Planning Comm’n, 99-2154, p. 3 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 18-19 (citing Curran v. Board of Zoning Adjustments, 90-1441 (La.App. 4 Cir. 04/16/91), 580 So.2d 417, 418; Lake Forest Inc. v. Board of Zoning Adjustments of City of New Orleans, 487 So.2d 133, 135 (La.App. 4th Cir.1986); Cross v. City of New Orleans, 446 So.2d 1253, 1255 (La.App. 4 Cir.1984)). The jurisprudence has further recognized that “[t]he reviewing court may not simply substitute its own judgment for that of the BZA.” Id. The jurisprudence has still further recognized that it “ ‘is not within the province of the appellate court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public.’ ” Toups v. City of Shreveport, 10-1559, pp. 5-6 (La.3/15/11), 60 So.3d 1215, 1218 (quoting TSC, Inc. v. Bossier Parish Police Jury, 38,717 (La.App. 2 Cir. 7/14/04), 878 So.2d 880).
On appeal, the Plaintiffs contend that the trial court committed legal error by denying their rule to show cause why the BZA’s decision should not be overruled and reversed. In support, the Plaintiffs present two main arguments. First, they contend that they should have been granted a new (called “supplemental” by the DSP) permit to renovate their Duplex pursuant to the language of LRS-1. Second, they contend that they should have been granted an extension of their 2010 building permit for renovation pursuant to the work they performed on the Duplex. We address each of Plaintiffs’ arguments separately.

(i) New, “Supplemental” Permit

As noted above, the Plaintiffs contend that they should have been granted a new permit pursuant to LRS-1, which provides as follows:
| fiSection 9A.1. LRS-1 Lakeview Single-Family Residential District
9A.1.1. Purpose of the District
The purpose of the district is to provide for and encourage low density, single-family residential development of a relatively spacious character, together with churches, recreational facilities, and accessory uses as may be necessary or normal for residential surroundings, in *257 such a manner as to preserve the distinctive character of the Lakeview area. The district also is intended to provide for the maintenance of existing residential densities, as well as opportunities for compatible residential growth, by allowing for existing two-family dwellings and the re-establishment of those two-family dwellings that have lost their legal nonconforming status as the immediate previous legal use of the structures.
[[Image here]]
9A.1.3. Permitted Uses
The following uses of land are authorized as permitted uses in the LRS-1 Lakeview Single-Family Residential District. Timeshare buildings and transient vacation rentals are prohibited:
[[Image here]]
2A. Two-Family Residential Dwellings as described below:
a. Two-family dwellings, where the two-family residential use is the immediate previous use of the structure, shall be permitted to be re-established, structurally altered, and additional floor area may be added to the structure, provided that no additional dwelling units shall be permitted.
b. Two-family residential structures described above may be demolished and rebuilt, provided that they obtain a building permit for construction within one (1) year of issuance of a demolition permit and complete construction and obtain a Certificate of Occupancy from the Department of Safety and Permits within (1) year of the issuance of the building permits.
c. With regard to the standard time limitations in subsection (b) above regarding demolition and building permits, properties that were established as legal two-family dwellings as of August 29, 2005 (the date of Hurricane Katrina) shall retain two-family dwelling status for three years following demolition or until August 29, 2010, whichever is earlier. These Katrina damaged two-family dwellings that have not obtained a building permit by August 29, 2010 will lose two-family status and revert to the underlying single-family status.
|7The Plaintiffs contend that LRS-1 does not set forth any time limitation for owners applying for permits to renovate their two-family dwellings in Lakeview. They point out that subsection (c) of 9A.1.3.2A, which imposes a five-year-deadline on owners of two-family dwellings applying for permits, refers to subsection (b) regarding demolition only. Thus, the Plaintiffs contend that because the Duplex was never demolished, subsection (b) and (c) do not apply. Rather, they contend that subsection (a) is the only applicable provision. Subsection (a) unequivocally provides, under permitted uses, that “[t]wo-family dwellings, where the two-family residential use is the immediate previous use of the structure, shall be permitted to be reestablished.” Thus, the Plaintiffs contend that when they applied to the DSP in 2012 they should have been granted a new permit to renovate their Duplex.
The City counters that, as interpreted by Mr. May, the five-year period in CZO 9A.1.3.2A(e) applies to both owners of two-family dwellings applying for permits regarding demolition and owners of two-family dwellings applying for permits regarding renovation or repairs. Thus, the City contends that the Plaintiffs were correctly denied a permit in 2012, as it was two years after the five-year grace period expired; hence, their two-family dwelling no longer enjoyed legal nonconforming use status. We disagree.
As noted, in his inter-office memorandum, Mr. May acknowledged that LRS-1 was unclear. Mr. May, thus, interpreted *258 the meaning of the ordinance. See Esplanade Ridge Civic Ass’n v. City of New Orleans, 13-1062 (La.App. 4 Cir. 2/12/14), 136 So.3d 166, 2014 WL 700546. However, under Article IV, Section 4-702 of the New Orleans Home Rule Charter, Mr. May’s duties as the DSP’s | ^Director are only to “[ajdminister and enforce” the zoning ordinances. The DSP’s Director is not entitled to create law; that is the legislative body’s function.[7] Further, the DSP’s Director is not entitled to interpret the law; that is the judiciary’s function.[8] This court, not the DSP’s Director (Mr. May), is charged with the responsibility of interpreting the meaning of an ordinance.[9] See Williams v. Parish of St. Bernard, 10-0397, p. 3 (La.App. 4 Cir. 10/13/10), 49 So.3d 520, 523. The proper interpretation of a statute or an ordinance is a question of law, and is, thus, reviewed by this court under a de novo standard of review. Id., 10-0397 at p. 3, 49 So.3d at 523.
This court has held that [t]he statutory and jurisprudential rules for statutory construction and interpretation apply equally well to ordinances, rules and | regulations. State v. Bell, 05-0808, p. 6 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 778. Regarding interpreting the meaning of an ordinance, this court has stated:
Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature’s intent. The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.
Williams, 10-0397 at p. 7, 49 So.3d at 525-26. Regarding the interpretation of an ordinance that is unclear, the jurisprudence has provided:
When the expressions of a law are “dubious”, the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or *259 the cause which induced the lawmaker to enact it. La.C.C. art. 18; Nash v. Whitten, 326 So.2d 856 (La.1976); Groves v. Board of Trustees of Teachers’ Retirement System of Louisiana, 324 So.2d 587 (La.App. 1st Cir.1975), writs denied, 326 So.2d 378, 380 (La.1976). When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980).
Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360-61 (La.App. 1st Cir.1984).
Discussing the interpretation of zoning ordinances in particular, this court has noted the following:
A legal nonconforming use is “designed to protect those uses which were established before the enactment of a restrictive zoning regulation.” Weisler v. Board of Zoning Adjustments, 98-3007 (La.App. 4 Cir. 11/17/99), 745 So.2d 1259, 1261; Humphrey v. Robertson, 97-1742, p. 8 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, 337. Since a nonconforming use is inconsistent with the purpose of zoning ordinances, decisions regarding such status should be viewed narrowly with all doubt resolved against continuation or expansion of the nonconforming use. Weisler, supra, 745 So.2d at 1261. However, this principle should [not] be confused with the principle that a zoning ordinance, being in derogation of the rights of private ownership, must be construed, when subject to more than one reasonable interpretation,^J^according to the interpretation which allows the least restricted use of the property. Id.
Cordes v. Board of Zoning Adjustments, 09-0976, p. 10 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 510-11.
Given the plain language of LRS-1, we find merit to the Plaintiffs’ argument that the five-year time period in which to apply for a permit applies only to owners of two-family dwellings who desire to demolish and rebuild the dwelling from Hurricane Katrina damage. Indeed, at oral argument before this court, the City argued that the City Council likely enacted this statute when they were under the impression that every home in Lakeview would have to be demolished.
Because the meaning of LRS-1 is unclear, we must look to the legislative intent. In the purpose section of the ordinance, the importance of maintaining the neighborhood’s two-family dwellings post storm and post re-zoning is emphasized. As noted at the outset, the ordinance provides:
9A.1.1. Purpose of the District
... The district also is intended to provide for the maintenance of existing residential densities, as well as opportunities for compatible residential growth, by allowing for existing two-family dwellings and the re-establishment of those two-family dwellings that have lost their legal nonconforming status as the immediate previous legal use of the structures.
The City Council’s purpose in enacting this ordinance was to protect existing two-family dwellings. With this intent in mind, and because owners of two-family dwellings were not put on notice of a clear deadline to apply for renovation permits, we find that the Plaintiffs should have been granted a new permit in 2012.

(ii) Extension of the Plaintiffs’ 2010 Permit

The Plaintiffs also argue that, at a minimum, they are entitled to an extension *260 of the permit that they were issued in 2010. We agree.
lnPermits issued by the DSP normally expire within six months.[10] However, permits issued to complete repairs resulting from an “act of God,” such as Hurricane Katrina, have a lifespan of one year.[11] The New Orleans city zoning ordinances provide for permits to be extended beyond their normal time period for good cause.[12]
The Plaintiffs contend that they completed work pursuant to their permit, such as painting and structural work. The Plaintiffs further contend that the administrative process of the Road Home Program delayed their renovation of the Duplex. The Plaintiffs still further contend that they were not allowed to begin work until a contractor was assigned and a closing took place, which did not happen until 2012.
The City counters that the Plaintiffs did not provide any compelling circumstances that would force the DSP to make an exception to the general rule and grant them an extension to their permit. The City contends that their inspector went to the Duplex and found that no work had been performed pursuant to the | ^permit. The City further contends that the Plaintiffs were required to apply for an extension of their permit before their other permit expired, but they failed to do so.
The BZA’s decision to deny the Plaintiffs either a new permit or an extension of their prior permit was arbitrary and capricious. As noted above, Hurricane Katrina was a unique situation that resulted in extreme delays. The Plaintiffs applied for a permit in 2010 and continued to take the necessary steps to complete their application with the Road Home Program. The Plaintiffs established that they made efforts towards repairing the Duplex and getting it back on the market. Given these circumstances, we find that the Plaintiffs are an exception to the general rule and should have been granted a permit to renovate their Duplex.
Accordingly, we find that the trial court erred in affirming the BZA’s decision and denying the Plaintiffs’ rule to show cause why the BZA’s decision should not be overruled and reversed.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed. The BZA is hereby ordered to issue a permit to the Plaintiffs to allow for the renovation of their Duplex.
REVERSED.

. The Louisiana Supreme Court has described a non-conforming use of property as "[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated.” Redfearn v. Creppel, 455 So.2d 1356, 1358 (La.1984); see also Joubert v. City of New Orleans, Office of Safety & Permits, 09-0601, p. 3 (La.App. 4 Cir. 1/13/10), 30 So.3d 186, 188-89.

. CZO Article 13 Nonconforming Uses, Section 13.3. Destruction of a Nonconforming Use, 13.3.2. Procedures provides:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of the issuance of the restoration permit unless extensions are approved by the Board of Zoning Adjustments.

. The permit stated that the work to be performed included: "Electrical, Hvac, Plumbing, Sheetrocking, Painting and others to make habitable.”

. During the hearing, the BZA heard evidence and testimony from the Plaintiffs, several of Plaintiffs’ neighbors (both in support and in opposition to the Plaintiffs), and the DSP personnel. The record from the hearing also includes several photographs of the Duplex depicting the work that the Plaintiffs performed on the Duplex since Hurricane Katrina.

. Although the video transcript from the BZA hearing was lost, all physical evidence presented at the hearing, including the photographs and the Plaintiffs’ letter, are included in the record on appeal.

. The Plaintiffs filed their petition timely, pursuant to CZO 14.11, within thirty days after the filing of the BZA’s decision in the office of the Board on January 17, 2013.

. The Louisiana Supreme Court recently delineated the powers of the Legislature in Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732, p. 14 (La.1/19/05), 903 So.2d 392, 403, stating:
In Louisiana, legislation is the superior source of law which custom cannot abrogate. La. Civ.Code Ann. art. 1, comments (a) and (c). As authorized in La. Const. Ann. art. Ill, § 1, the legislative power of the state is vested in the Legislature. In the exercise of legislative power, the Legislature may enact any legislation that the state constitution does not prohibit. Board of Com'rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d 281, 286 (La.1986).

. The Louisiana Supreme Court also delineated the powers of the judiciary in Unwired Telecom Corp., 03-0732 at p. 16-18, 903 So.2d at 404-05, stating:
La. Const. Ann. art. V, § 1 vests the judicial power in a supreme court, courts of appeal, district courts, and other courts authorized by Article V. The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of government.... Under our system of government, "[i]t is emphatically the province and duty of the judicial department to say what the law is.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). The interpretation of the law belongs to the judiciary, not the Legislature.

.The City contends that in order to administer and enforce ordinances, the DSP’s Director can interpret the ordinances according to their intent. In support, the City cites New Orleans v. Rasmussen, 542 So.2d 13, 16 (La.App. 4th Cir.1989) (owner's video arcade was not a specified permitted use under the zoning ordinance). In Rasmussen, however, the DSP’s Director did not make up new law or interpret the law; rather, the Director applied the facts to the ordinance and enforced the ordinance.

. CZO 17.2.7.(1) Expiration provides:
Except for prior permits provided for in Section 17.2.5, a building permit issued pursuant to this section shall expire within six (6) months after its issuance if construction has not commenced and if no request for extension has been filed prior to such date.

. CZO 13.3.2. Procedures provides:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of the issuance of the restoration permit unless extensions are approved by the Board of Zoning Adjustments.

.This rule is set forth in CZO 17.2.7(2), which provides: "[t]he Director of Safety and Permits, upon written application filed prior to expiration of the building permit, may authorize for good cause an extension not to exceed six (6) months of such permit.”