898 So.2d 524 (2005)
Alcide MOSLEY, Individually and as Tutor of His Minor Daughter, Channon Mosley
v.
ORLEANS PARISH SCHOOL BOARD.
No. 2004-CA-1273.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 2005.
*525 Darleen M. Jacobs, Al Ambrose Sarrat, Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellee.
Donesia D. Turner, Bryan & Jupiter, APLC, and Darryl Harrison, Meri M. Hartley, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, and EDWIN A. LOMBARD).
CHARLES R. JONES, Judge.
The named defendant/appellant, the Orleans Parish School Board (hereinafter the OPSB), seeks a review of a district court judgment which awarded the plaintiff $175,000 in general damages for bodily injuries, $19,294.35 in medical expenses, and expert fees of $2,700. We affirm.

*526 Statement of the Facts
The plaintiffs, Mr. Alcide Mosley who filed individually and as tutor of his daughter Ms. Channon Mosley, allege that on November 18, 1997, Ms. Mosley was injured during a fire at Sarah T. Reed High School. Around 1:30 p.m., a fire was started in the school in the auditorium. As a result, a stampede occurred because the students saw smoke in the hallway and attempted to exit the school through the designated evacuation exit.
As the students crowded into the foyer, they found that exit doors were blocked by teachers and security guards. The school administrators then instructed the students to return to class because the fire was under control. However, the smoke did not clear and the students tried to exit the building, as practiced in prior drills, to escape the smoke. The students repeatedly complained of having difficulty breathing, but they were not allowed to exit the building.
Eventually, the students protested and the plaintiffs claim that the New Orleans Police Department was called to assist the administrators. Ms. Mosley testified at trial that the police, after arriving at the school, sprayed mace in the area of the students who began to complain of eye irritation. The students also began to get unruly and eventually someone, possibly a student, picked up a 2'x 4' board and hit Ms. Mosley in the head and on the knee. Injured, she fell to the ground.
Ms. Mosley was brought to the office and an incident report was completed by a school administrator which indicated that EMS was not called to examine or treat Ms. Mosley. The school itself did not attempt to render first aid to Ms. Mosley for her injuries, even though she stated that she was in pain at the time. In addition, the report classified the fire as a "drill," rather than an actual fire.

Procedural History
On August 27, 1998, Mr. Alcide Mosley filed suit on behalf of his minor daughter. The OPSB filed a Dilatory Exception of Lack of Procedural Capacity alleging that Mr. Mosley did not plead that he had the proper capacity to bring suit on behalf of Channon Mosley. The plaintiff filed a response along with a Supplemental and Amending Petition which added Channon Mosley as a plaintiff. The OPSB filed its Answer to the original Claim for Damages and Answer to the First Supplemental and Amending petition.
A non-jury trial commenced on March 24, 2004, and after reviewing all of the evidence and testimony presented, the district court entered judgment in favor of the plaintiff, granting a $175,000 award in general damages, $19,294.35 in medical expenses, and expert fees of $2,700. In its reasons for judgment, the district court stated that because the OPSB failed to call the security guards and the administrators who were present during the incident to refute the plaintiff's version of events, it had no choice other than to accept the plaintiff's version and find her a credible witness. The district court concluded that the sole and proximate cause of the plaintiff's injuries was the negligence of one or more employees of the OPSB.
Subsequently, the OPSB filed its motion for appeal. In its assignments of error, the OPSB argues that the district court erred in finding the OPSB negligent and further argues that the district court abused its discretion in awarding monetary damages to Ms. Mosley.

Discussion

Negligence
The duty owed by a defendant to protect against injury is a question of law and is decided by the trial court in the first *527 instance and the appellate court on review. Cuevas v. City of New Orleans, 1999-2542 (La.App. 4 Cir. 6/21/00), 769 So.2d 82, 86.
Under La. Civ.Code Art. 2315, negligence claims are examined using a duty/risk analysis, wherein the plaintiff must prove each of the following elements: (1) defendant's conduct was a cause in fact of the plaintiff's injuries; (2) the defendant had a duty to conform conduct to a specific standard; (3) the defendant breached that duty; (4) the defendant's conduct was the legal cause of plaintiff's injuries; and (5) plaintiff sustained actual damages. Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. See Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318, 326.
The first step in determining liability under the duty-risk analysis is to determine the cause in fact which essentially involves a "but for" inquiry. Shambra v. Roth, XXXX-XXXX (La.App. 4 Cir. 9/29/04), 885 So.2d 1257, 1260, citing Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. Thus, in other words, it must be determined that the injuries sustained by Ms. Mosley would not have occurred but for actions of the school staff.
In the case at bar, the students were reacting to a fire alarm and attempted to exit the building through the appropriate fire exits. However, while the students were proceeding to the designated exit, the administrators, unbeknownst to the students, had discovered that the cause of the smoke in the building was an artificial tree which had been ignited by an unknown arsonist. The fire was apparently contained, but the students, who saw the smoke in the corridor, were not aware of the change in circumstances. The situation was further complicated when the students complained of eye irritation and difficulty breathing because of the smoke.
The administrators, who were responsible for the students while school was in session, decided to barricade the door rather than to allow the students to complete the evacuation procedure. The students believed they were in imminent danger, but were prevented from exiting the building. Consequently, as the students continued to complain of eye irritation and of smoke inhalation, the more chaotic the situation became. The students attempted to force their way out of the building because they feared for their safety. Unfortunately, in the midst of the melee, Ms. Mosley was struck by a board and sustained her injuries.
Applying the duty-risk analysis, we find that given this peculiar set of circumstances, the OPSB had a duty to protect the students from harm. This duty also encompasses maintaining control of emergency situations that could place the students in harm's way. Hence, a fire alarm notifies persons within a building that danger may be near. The alarm puts persons on notice to evacuate to a safe location until the fire is contained. Thus, the school staff had a duty to allow the students to exit the building, as had been practiced on numerous occasions, and the school staff was responsible for allowing them to do so in a safe and orderly manner.
The New Orleans Public School Emergency Procedure Guide provides that in the event of a fire, the students and staff should evacuate to a safe distance outside of the building. The students believed that the building was on fire and had observed that smoke was present in the corridor. The students responded to the sound of the fire alarm and proceeded to the designated exit in the manner in which they were instructed. However, they were *528 prevented from leaving a building they believed to be on fire. The subsequent discovery by staff and administration that the fire was contained did not relieve the school of its duty to allow the students to exit the building. Had the students been allowed to complete the fire evacuation procedure to exit the building, the students probably would not have attempted to force their way out of the building. Thus, the variance in the evacuation procedure by the school staff not only reflects that the staff failed to maintain adequate control of the situation, it also demonstrates that the school staff was also responsible for the situation exploding into chaos.
But for the change in the evacuation procedures, the students probably would not have resorted to forcing their way out of the building. Further, had the administrators allowed the students to proceed out of the building in an orderly manner, the breakdown in an otherwise orderly evacuation procedure would not have occurred. In barricading the only exit the students had available to them, the school staff not only breached their duty owed to the students, they also exacerbated the situation by closing the students in a building the students believed to be on fire. Thus, as a result of the school's failure to appropriately manage the evacuation of the building, the situation became unmanageable and Ms. Mosley was injured. The staff improperly executed the evacuation procedure and these actions were the cause in fact of Ms. Mosley's injuries. This assignment of error is without merit.

Damage Award:
In its second assignment of error, the OPSB argues that the district abused its discretion in awarding $175,000 in general damages to Ms. Mosley.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257, the court discussed the standard of review of general damage awards as follows:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Id. at 1261.
The record indicates that Ms. Mosley suffered a permanent knee impairment that significantly limits her activities. The record also indicates that Ms. Mosley underwent surgery in 2001 to repair her knee, but the surgeon, Dr. Walter Brent, testified that as a result of the injury, Ms. Mosley was assigned a 10% anatomical disability rating to her lower right extremity and was advised to not "squat, climb, stand, run, or participate in active sports."
Therefore, we conclude that the damage award in this case is consistent with damage awards for injuries of this sort. Ms. Mosley is a young woman who sustained a serious injury which now seriously limits her ability to participate in certain activities. In its reasons for judgment, the district court cited cases in support of its determination of monetary damages. We find no error in the district court's judgment and find that this assignment of error also lacks merit.

*529 DECREE
For the reasons assigned herein, we affirm the district court judgment.
AFFIRMED.