Judge Joy Cossich Lobrano
In this noise complaint litigation, plaintiffs/appellants, Peterson M. Yokum and Polly Elizabeth Anderson (collectively "Yokum"), appeal the district court's September 25, 2014 judgment dismissing Yokum's claim for damages against defendants/appellants, French Quarter nightclub Funky 544, LLC, as well as its management company and its officers, property owners, and insurers, (collectively "Funky 544" or "the nightclub"), and the March 23, 2016 judgment denying Yokum's motion for new trial *729 and/or judgment notwithstanding the verdict ("JNOV"). For the reasons that follow, we affirm.
Much of the background of this litigation was set forth in this Court's prior opinion in Yokum v. 544 Funky, LLC , 2015-1353, pp. 1-3 (La. App. 4 Cir. 9/28/16), 202 So.3d 1065, 1067-68, writ denied , 2016-2231 (La. 1/25/17), 215 So.3d 685, as follows:
Funky 544 is located at 544 Bourbon St. in the French Quarter or the Vieux Carré. As French Quarter residents living near Funky 544 at 723 Toulouse St., the Appellants [Yokum] aver that they submitted verbal and written complaints to the nightclub's operators requesting cessation of the excessive amplified sound emanating from the property, but to no avail. Consequently, in 2010, they filed suit against Funky 544 asserting misdemeanor nuisance claims punishable by fines and/or imprisonment resulting from their amplifier and sub-woofer usage.[footnote omitted] The Appellants sought injunctive and declaratory relief as well as damages. The Appellants explain that their lawsuit involves nuisance claims relating to physical sound-wave trespasses of excessive sound levels. Additionally, Mr. Yokum also raised claims under Sec. 66-136 et seq. of the Code of Ordinances for the City of New Orleans, which is also known as the City of New Orleans Noise Ordinance ("the NONO").
On January 7, 2013, the district court issued a preliminary injunction wherein it ordered that Funky 544:
... be enjoined from violating and shall comply with all applicable sections of the City of New Orleans Noise Ordinance, Sections 66-136, et seq., and specifically, Sec. 66-201, 202 and 66-203. This Court has instructed the Defendants [Funky 544] immediately institute policies and procedures to ensure the level of noise emanating from Defendants' premises does not exceed the sound level as indicated in Sec. 66-202 "Maximum permissible sound levels by receiving land use." This includes, but is not limited to, taking appropriate measurements as called for by the City of New Orleans Noise Ordinance Sec. 66-201[footnote omitted] and reducing the level of sound emanating from the premises as necessary to comply.
The Appellants later filed a Motion for Violation of the Preliminary Injunction and/or Contempt asserting that Funky 544 failed to comply with the preliminary injunction. They assert that Funky 544 refused to institute a sound control program to comply with the NONO and did not maintain compliance documents. The district court referred the motion to trial on the merits.
After several days of trial, a jury determined that Funky 544 was not a nuisance to the Appellants, who were not awarded damages. Post-trial, the district court considered the Appellants' Motion for Judgment Not Withstanding Verdict and a Motion for New Trial, which were denied by the district court. The district court also considered the Appellants' Motion for Violation of the Preliminary Injunction and/or for Contempt and Motion for Permanent Injunction. The district court denied both motions.
The appeal currently before this Court arises from the jury trial, at which Yokum was not awarded any damages and all claims by Yokum against Funky 544 were dismissed with prejudice. While Yokum's motion for new trial and/or JNOV was under advisement, the district court also ruled upon the motion for permanent injunction, which was the subject of the prior appeal. After the district court denied Yokum's motion for new trial and/or JNOV, *730 the instant appeal followed, in which Yokum sets forth sixteen (16) assignments of error.
Jury Instructions
Yokum contends that the district court erred in two respects in its jury instructions:
• by rejecting the jury instruction requested by Yokum regarding the appropriate evidentiary weight to give uncontroverted and unrebutted evidence
• by refusing to give a jury instruction regarding spoliation and adverse inference relative to certain evidence destroyed by Funky 544
The Louisiana Supreme Court set forth the following standard of review relative to jury instructions in Adams v. Rhodia, Inc. , 2007-2110, pp. 6-8 (La. 5/21/08), 983 So.2d 798, 804-05 (internal citations omitted):
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; the judge must, however, correctly charge the jury. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error.
...
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law....
However, when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict.... Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.
... Because the adequacy of jury instruction must be determined in the light of jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. Thus, on appellate review of a jury trial the mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial de novo , without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case.
Yokum requested the following jury instruction on uncontroverted evidence:
The law is clear that in evaluating the evidence, you should accept as true uncontradicted testimony of a plaintiff witness absent a sound reason for its rejection, and these factual finding[s] are to be given great weight.
The district court gave the following instruction:
...if the testimony on any point is not contradicted, you should treat it as proving that fact unless the testimony seems to you to be impossible or improbable or unless the witness has shown by his or *731 her testimony or it is shown by the other evidence in the case to be unworthy of belief.
On appeal, Yokum argues that the jury instruction given by the district court was confusing and "encourage[d] the jury to doubt uncontroverted testimony." Funky 544 contends that the district court's instruction was a correct statement of the law and was very similar to the instruction proposed by Yokum. Funky 544 also argues that Yokum failed to make a contemporaneous objection to the jury instruction; thus, he failed to preserve the issue for appeal.
We agree with Funky 544. Yokum waived appellate review of this issue because he objected to the instruction for the first time in his motion for new trial and/or JNOV. La. C.C.P. art. 1793(C) provides as follows:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
"Nevertheless, if jury instructions or interrogatories contain a 'plain and fundamental' error, the contemporaneous objection requirement is relaxed and appellate review is permitted." Chicago Prop. Interests, L.L.C. v. Broussard , 2015-0299, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1074, 1078 (citing Berg v. Zummo , 2000-1699, p. 13, n. 5 (La. 4/25/01), 786 So.2d 708, 716, n. 5 ).
Having reviewed the particular jury instruction in the context of the jury instructions as a whole, we do not find that "plain and fundamental" errors exist. Moreover, Yokum fails to explain how the jury instruction at issue is an incorrect statement of law. Consequently, Yokum is precluded from raising this assignment of error because he did not object to the jury instruction regarding uncontroverted evidence at trial.
Yokum also argues that the district court erred by failing to instruct the jury regarding spoliation and adverse inference. During discovery, Yokum took depositions of Funky 544 pursuant to La. C.C.P. art. 1442, through its representatives Jude Marullo ("Marullo") and Anthony D'Arensbourg ("D'Arensbourg"). Marullo is the managing member of Funky 544, and D'Arensbourg is its general manager. Both Marullo and D'Arensbourg denied in their depositions that Funky 544 had any policy to record sound measurements taken by the nightclub staff or that any Funky 544 records existed of such sound measurements. According to Marullo and D'Arensbourg, nightclub staff were using a sound reader to determine sound levels but were not writing down or recording any measurements. Subsequently, Funky 544 disclosed to Yokum that, for a limited period of time, the sound measurements taken by Funky 544 employees in the doorway of the nightclub were written on "band production sheets;" however, Funky 544 did not retain those records.
Yokum filed a motion for contempt, and on June 19, 2014, the district court found that "spoliation did occur," granted the motion against Funky 544, and denied the motion as to Marullo. The district court ordered that Funky 544 is "estopped from disputing the sound readings made by [Yokum's] expert from the doorway" of the nightclub. Thereafter, Funky 544 filed a motion for reconsideration. On August 29, 2014, the district court granted the motion, finding that the "improperly destroyed *732 sound readings taken from the doorway of Funky 544... has not harmed or prejudiced" Yokum. Nevertheless, the district court determined that Yokum was denied access to these readings and ordered that Funky 544 "will not be allowed to produce any of the band production sheets at the trial of this matter."[1]
Prior to trial, Yokum requested the following jury instruction:
The court instructs the jury that, with regard to inferences to be drawn from a party's destruction of evidence, the test is whether the court can draw from fact that a party has destroyed evidence and that the party did so in bad faith. If you, the jury, find that the defendant intentionally hid or destroyed evidence, then you may infer that evidence would be unfavorable to defendants.
The district court did not include the proposed instruction or any other instructions on the legal standard for spoliation or adverse inference. Yokum objected to the exclusion of its proposed instruction before the jury received its instructions.
"The theory of spoliation of evidence refers to the 'intentional destruction of the evidence for the purpose of depriving the opposing parties of its use.' " Everhardt v. Louisiana Dep't of Transp. & Dev. , 2007-0981, p. 7 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1044 (citations omitted). "A court may either exclude the spoiled evidence or allow the jury to infer that the party spoiled the evidence because the evidence was unfavorable to that party's case." Id.
In Carter v. Hi Nabor Super Mkt., LLC , 2013-0529, pp. 8-9 (La. App. 1 Cir. 12/30/14), 168 So.3d 698, 704-05 (internal citations omitted)(emphasis in original), the First Circuit Court of Appeal explained:
...although an adverse inference jury instruction is a common sanction imposed, it is merely one of the possible sanctions that a trial court may impose when evidence has been destroyed or rendered unavailable by a party. "Under the federal and state rules of civil procedure that regulate discovery procedures, courts have broad discretion to impose a variety of sanctions against a party that fails to produce evidence in violation of the discovery rules." [Footnote omitted.] The purpose of such sanctions is to achieve evidentiary balance, fairness, and justice, as well as to deter improper conduct. While different sanctions may be appropriate under the facts of a given case, "courts agree that [a court] should impose the least severe sanction necessary to remedy prejudice to the non-spoliating party." [Footnote omitted.] Any sanction to be imposed by the trial court should be tailored to the particular facts existing in the case.
The range of possible sanctions include dismissing a case, rendering a default judgment, striking pleadings, striking a claim or defense, and excluding evidence. A determination as to what sanction is appropriate in a particular case is a matter within the province of the trial court, depending upon the facts present. As with other evidentiary and discovery rulings, the trial court has much discretion in deciding which sanction, if any, to impose. The appellate standard of review for a trial court's evidentiary ruling on this issue is whether the trial court abused its broad discretion.
*733 See also La. C.C.P. art. 1471 (providing as an available discovery sanction an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence").[2]
In the matter before us, the district court exercised its wide discretion in imposing discovery sanctions to preclude Funky 544 from refuting sound readings by Yokum's expert in the doorway of the nightclub, and excluded the band production sheets from evidence. We find no abuse of that discretion.
While the district court must correctly charge the jury, the district court is "under no obligation to give any specific jury instructions that may be submitted by either party." Adams , 2007-2110 at p. 6, 983 So.2d at 804. We do not find that the district court erred by omitting any applicable, essential legal principle. See id. The only trial testimony signifying that records by Funky 544 employees of doorway sound measurements may have existed was by Eric Zwerling, Funky 544's expert in noise ordinances, regulatory enforcement, noise-level measurement assessment and interpretation; in response to Yokum's counsel's questioning about Zwerling's knowledge of sound data collected by Funky 544 that was either missing or destroyed, Zwerling responded that he had "heard ... something to that effect." No witness testified at trial to any personal knowledge of documents in which these doorway sound measurements were recorded or that such documents were destroyed thereafter. Funky 544 argues and we agree that in this context a spoliation instruction would have confused the jury. This assignment of error is without merit.
Statutory Interpretation
Yokum raises one assignment of error concerning interpretation and applicability of an ordinance, contending that the district court erred:
• in interpreting Section 66-203(3)(d) of the NONO and in concluding that this ordinance does not apply in this matter.
Section 66-203(3)(d) provides:
*734 In addition to the general prohibitions set out in this article, the following specific acts are declared to be in violation of this article:
...
(3) Radios, televisions, musical instruments and similar devices.
...
d. It shall be unlawful between the hours of 9:00 p.m. Sunday through Thursday and 10:00 a.m. on the subsequent morning or between the hours of 10:30 p.m. on a Friday or Saturday and 10:00 a.m. the subsequent morning to operate or play in a dwelling occupying a parcel or lot of land or to operate or play anywhere on a parcel or lot of land contiguous or adjacent to another parcel or lot of land occupied by a neighboring dwelling any radio, television, phonograph, loudspeaker, sound-amplification equipment or similar device which produces or reproduces sound in such a manner as to be plainly audible at a distance of one foot from any exterior wall of the neighboring dwelling or at a distance beyond the boundary between the parcels or lots, whichever is the lesser distance from the point where the sound is produced or reproduced.
"The proper interpretation of a statute or an ordinance is a question of law, and is, thus, reviewed by this court under a de novo standard of review." Spilsbury v. City of New Orleans , 2013-1258, p. 8 (La. App. 4 Cir. 2/19/14), 136 So.3d 253, 258 (citing Williams v. Parish of St. Bernard , 2010-0397, p. 3 (La. App. 4 Cir. 10/13/10), 49 So.3d 520, 523 ). As in the case of a statute, the interpretation of an ordinance starts with the language of the ordinance itself. Id. See also State v. Bell, 2005-0808, p. 6 (La. App. 4 Cir. 12/6/06), 947 So.2d 774, 778. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." Spilsbury , 2013-1258 at p. 9, 136 So.3d at 258.
Yokum argues that the district court erroneously interpreted the ordinance, specifically the terms of "contiguous" and "adjacent," and improperly excluded evidence of violations of this statute. Funky 544 argues, and we agree, that this Court has already ruled on the interpretation, applicability, and admissibility of evidence of violations of this ordinance in the prior appeal concerning the denial of the permanent injunction. This Court stated:
At trial, the district court determined that the wording of section was factually inapplicable because Funky 544 is neither "contiguous or adjacent to" the Yokums' residence at 723 Toulouse St. According to Black's Law Dictionary, contiguous is defined as "[t]ouching at a point or along a boundary; adjoining." Black's Law Dictionary (10th ed. 2014). Furthermore, adjacent is defined as "[l]ying near or close to, but not necessarily touching." Black's Law Dictionary (10th ed. 2014). The district court explained at trial:
... However, the ordinance does say contiguous or adjacent, which the Court rules does not include a property approximately 200 feet from the Yokum's residence. So for that reason, the Court finds the ordinance inapplicable to Funky 544.
Considering the definitions of contiguous and adjacent and the locations of the properties at issue, we do not find that the district court erred in determining that section (d) of the ordinance was inapplicable under the facts presented.
Yokum , 2015-1353 at pp. 12-13, 202 So.3d at 1073-74.
*735 "Under the 'law of the case' doctrine an appellate court will not reconsider its rulings of law on a subsequent appeal in the same case." In re M.W. , 93-1809 (La. App. 4 Cir. 1994), 641 So.2d 582, 584. This doctrine is discretionary, however, and "not applicable in cases of palpable former error or where application would cause manifest injustice." Id.
The testimony at trial supported that the Yokum home was located nearly 200 feet from Funky 544. The district court looked to the language of the ordinance and determined that a property 200 feet away is not "contiguous or adjacent to" the Yokum home. Yokum merely urges this Court to search for legislative intent by assuming that if noise is audible 200 feet from a property, then it must also be audible within one foot of the property. He fails, however, to demonstrate how any absurd consequences will result from interpreting the ordinance as written, and we find no basis on which to search for legislative intent. Spilsbury , 2013-1258 at p. 9, 136 So.3d at 258. Thus, we find no palpable error or manifest injustice resulting from this Court's prior holding as to the interpretation of Section 66-203(3)(d) of the NONO. This assignment is without merit.
Liability
We next consider Yokum's assignments of error regarding the jury's factual findings as to liability. On appeal, Yokum argues that no reasonable jury could have found Funky 544 free from liability under Civil Code articles 667 and 2315,[3] and the district court erred in rendering judgment entering a jury verdict finding no liability and in denying JNOV and new trial, despite the following evidence:
• Funky 544's activities interfered with the use and enjoyment of Yokum's home periodically for at least four years
• Excessive noise levels emanated from Funky 544 in March 2011 and October 2012
• Funky 544 "knew they created noise that could be heard inside [Yokum's] residence, witnessed the noise themselves, and were told by their own noise expert that their noise was excessive and impacted the neighbors"
• Yokum's psychologist expert opined that Funky 544's noise caused Yokum's injuries.
A court of appeal may not set aside the jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Stobart v. State through DOTD , 617 So.2d 880, 887 (La. 4/12/1993) (citing Rosell v. ESCO , 549 So.2d 840 (La. 1989) ). The Louisiana Supreme Court has provided a two-prong test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the district court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Id. (citing Mart v. Hill , 505 So.2d 1120, 1127 (La. 1987) ). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but *736 whether the factfinder's conclusion was a reasonable one. Id.
Louisiana Code of Civil Procedure art. 1811(F) provides that a motion for JNOV may be granted on the issue of liability or on the issue of damages or both. The Supreme Court set forth the standard for granting a JNOV in Davis v. Wal-Mart Stores, Inc. , 2000-0445, p. 4 (La. 11/28/00), 774 So.2d 84, 89 :
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Appellate courts use a two-part inquiry when reviewing the district court's determination to grant or deny a JNOV. Hammons v. St. Paul , 2012-0346, p. 5 (La. App. 4 Cir. 9/26/12), 101 So.3d 1006, 1010. "First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred." Id. Second, "[a]fter determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." Id. , 2012-0346 at p. 6, 101 So.3d at 1010-11.
Article 1811(A)(2) of the Louisiana Code of Civil Procedure provides that a motion for a new trial may be joined with a motion for JNOV, or a new trial may be prayed for in the alternative. As this Court has stated:
A motion for a new trial requires a less stringent test than for a JNOV because such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Although the language is similar between the standards for a JNOV and a new trial, there is a real difference between a finding that no evidence existed for a rational jury to reach a particular result and a finding that a jury could not have reached its conclusion on any fair interpretation of the evidence. In considering whether the verdict was supported by any fair interpretation of the evidence on a motion for new trial, the trial judge is free to weigh the evidence and make credibility determinations, and is not required to view the evidence in the light most favorable to the non-movant as on a JNOV motion.
The standard of appellate review in ruling on a motion for new trial is whether the trial court abused its discretion. A jury verdict cannot be set aside on the grounds that the verdict is contrary to the evidence if it is supportable by any fair interpretation of the evidence.
Stamps v. Dunham , 2007-0095, pp. 7-8 (La. App. 4 Cir. 9/19/07), 968 So.2d 739, 744-45 (internal citations omitted).
Louisiana Civil Code article 667 provides:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the *737 cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.
This Court has set forth the "relevant factors that a court must consider in making the factual finding of whether a nuisance has been established under La. C.C. art. 667" in Jones v. Capitol Enterprises, Inc. , 2011-0956, pp. 51-52 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 508-09 (citing 12 Ferdinand F. Stone, La. Civ. L. Treatise: Tort Doctrine , § 248 (1977) ). These factors include: (a) the "place where the activity occurs," taking into consideration the "neighborhood, zoning and planning standards, environmental goals"; (b) "the importance of the activity to the community as a whole"; (c) "the possibility, feasibility and cost of measures which would eliminate or reduce the harm to neighbors"; and (d) "the sensitivity of the one complaining."
The Louisiana Supreme Court explained that under the current version of Article 667, a proprietor's responsibility for damages to an aggrieved neighbor is examined under a negligence standard. Yokum v. 615 Bourbon St., L.L.C. , 2007-1785, p. 21 (La. 2/26/08), 977 So.2d 859, 874.[4] Where recovery is based on a defendant's use of property that causes damage to a neighbor, the injured neighbor must establish causation between the defendant's action or inaction and the damage resulting from the defendant's act or omission. Fiebelkorn v. Alford , 47,423, p. 15 (La. App. 2 Cir. 9/20/12), 105 So.3d 110, 118-19 (citing Haworth v. L'Hoste , 95-0714, p. 6 (La. App. 4 Cir. 11/30/95), 664 So.2d 1335, 1339 ).
General negligence claims arise under La. C.C. art. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Pursuant to La. C.C. art. 2315, "negligence claims are examined using a duty/risk analysis, wherein the plaintiff must prove each of the following elements: (1) defendant's conduct was a cause in fact of the plaintiff's injuries; (2) the defendant had a duty to conform conduct to a specific standard; (3) the defendant breached that duty; (4) the defendant's conduct was the legal cause of plaintiff's injuries; and (5) plaintiff sustained actual damages." Mosley v. Orleans Parish Sch. Bd. , 2004-1273, pp. 3-4 (La. App. 4 Cir. 2/16/05), 898 So.2d 524, 527. "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." Id. , 2004-1273 at p. 4, 898 So.2d 524, 527.
Yokum argues that he satisfied his burden of proof at trial under *738 Civil Code articles 667 and 2315. He contends that certain evidence he introduced at trial was not rebutted but was improperly disregarded by the jury. According to Yokum's argument, this evidence required a reasonable jury to find Funky 544 liable for Yokum's damages.
Yokum argues that he presented uncontroverted evidence that Funky 544's activities interfered with Yokum's use and enjoyment of his home for at least four years. Yokum relies on a complaint log he created, along with his testimony about the log, in which he attributed noise from several different sources on different occasions, including Funky 544. The testimony at trial revealed that Yokum lives within one block of Bourbon Street and that multiple bars, nightclubs, and other establishments that play music are located near his home. The complaint log begins ten years before Funky 544 opened in 2006. This log contains complaints not only about Funky 544, but also against several other establishments near Yokum's home.
Yokum also contends that evidence of excessive noise levels at Funky 544 in March 2011 and October 2012 was uncontroverted. During the time period in question, Yokum's expert noise control engineer, Arno Bommer, opined that noise from Funky 544 was excessive; according to Yokum, Bommer's testimony was uncontroverted because no defense expert had been retained in 2011 or 2012, and Funky 544 did not introduce expert testimony about any testing during that period. Funky 544's expert, Zwerling, was engaged in 2013. Both experts testified at trial as to their respective testing methodologies, findings, and opinions regarding testing by the other experts, which this Court discussed in its prior opinion in Yokum , 2015-1353 at pp. 8-9, 202 So.3d at 1071-72. Bommer and Zwerling offered differing opinions regarding what the sound level at Funky 544 should be so as to not impact Yokum and the proper method to measure ambient sound under the NONO.[5] ,[6] Bommer's 2011 and 2012 testing focused on determining whether Funky 544 violated the NONO, which involved taking sound measurements on Bourbon Street and Toulouse Street outside of Funky 544, as well as outside of Yokum's home. Bommer did not conduct any testing or measure any sound levels inside of Yokum's home in 2011 or 2012. Zwerling's testimony criticized Bommer's methodology during this period as failing to demonstrate the impact of sound on Yokum inside his home.
Yokum also argues that Funky 544 knew their noise levels were audible within Yokum's home and that Funky 544's expert admitted that its noise levels were excessive and impacted the neighbors. Marullo and D'Arensbourg testified, however, that they knew of Yokum's complaints of noise from Funky 544. Marullo testified regarding numerous measures taken at the *739 nightclub to reduce the level of sound leaving Funky 544 once Yokum's complaints came to his attention.[7] He also testified that his office is located on the second floor of Funky 544, that he is not disturbed by the music downstairs in the nightclub, and that he does not believe that the sound that Yokum hears in his home is from Funky 544. D'Arensbourg testified that when he received complaints from Yokum, he would instruct musicians and staff to reduce the volume of music. Zwerling testified that his statements regarding excessive noise impacting the neighbors appeared in an initial letter to Funky 544 and were based only on Bommer's reports before ever having visited Funky 544 or the French Quarter. Zwerling stated that after having taken sound measurements at Funky 544 and while walking in the direction of Yokum's home, he concluded that music from Funky 544 was inaudible within 30 feet of the nightclub and was inaudible at the doorway of Yokum's home.
Yokum also contends that evidence of causation between Funky 544's noise and Yokum's medical conditions was unrebutted. Yokum relies on the testimony by Dr. Robert Porter, a neuropsychologist, who treated Yokum and Anderson and diagnosed them with adjustment disorder that was caused by noise. While Dr. Porter testified that part of the noise at issue came from Funky 544, he also clarified that his opinion as to the source of noise was based on statements by Yokum and Anderson and reports by Bommer. Yokum also contends that the medical opinions of Dr. Kevin Bianchini and Dr. Arline Bronzaft, as well as Zwerling's findings, support Dr. Porter's opinion. Nevertheless, neither Dr. Bianchini's report nor Dr. Bronzaft's testimony differentiates between the multiple sources of noise in the area. Also, Zwerling testified as to the results of controlled impact testing done in June 2014 inside Yokum's home, in which Bommer and representatives of the parties participated, which was done during daytime when other establishments in the area were closed. Zwerling testified that the testing revealed no significant change in sound levels between when Funky 544 was playing music and when it was not. Zwerling also concluded that music from Funky 544 was barely audible in Yokum's bedroom when the air conditioner was off, and was inaudible with the air conditioning on or the bedroom door closed.
For the reasons ascribed above, we cannot agree with Yokum's characterization of the evidence in question as uncontroverted or unrebutted. This Court has stated that "[w]here there is conflict in the testimony, reasonable evaluation of credibility should not be disturbed on appeal." Yokum , 2015-1353 at p. 8, 202 So.3d at 1071 (citing Badke v. USA Speedway, LLC, 49,060, p. 20 (La. App. 2 Cir. 5/14/14), 139 So.3d 1117, 1128 ). "Furthermore, the trial court has great discretion to accept or reject expert testimony." Id. Thus, the district court's holding has a *740 reasonable basis and cannot be manifestly erroneous. We find nothing in Yokum's arguments herein that rises to the level requiring a JNOV or new trial. These assignments of error lack merit.
Evidentiary Rulings
Next, we address Yokum's assignments of error pertaining to the district court's evidentiary rulings. Yokum contends that the district court erred as follows:
• in allowing Funky 544 to introduce evidence of sound measurements despite the district court's order imposing sanctions for spoliation
• in allowing Funky 544's expert, Zwerling, to discuss discovery protocol despite an order in limine limiting his testimony to "the definitions and what is in the New Orleans Noise Ordinance"
• in allowing Funky 544's counsel to make closing arguments to the jury regarding Yokum's claims against other neighborhood businesses despite an order in limine prohibiting Funky 544 from "commenting upon, referring to, or exhibiting" evidence of Yokum's lawsuits against similar businesses
• in excluding evidence of Funky 544's violations of Section 66-203(3)(d) of the NONO
• in excluding evidence of Funky 544's violations of the New Orleans Alcoholic Beverage Law
• in excluding evidence regarding Funky 544's violations of the preliminary injunction
• in allowing counsel for Funky 544 to make closing statements about the character of Bourbon Street and the French Quarter, while limiting Yokum's expert testimony on the history and character of the French Quarter
• in precluding a former neighbor from testifying as a rebuttal witness regarding noise by Funky 544, while allowing counsel for Funky 544 to make closing statements that there was no other complaining neighbor
A district court is "granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion." Everhardt , 2007-0981 at p. 10, 978 So.2d at 1045.
Yokum contends that the district court erred by admitting into evidence doorway sound measurements taken by Funky 544 in 2014. According to Yokum, the introduction of this evidence violated the district court's prior sanction for spoliation and unfairly prejudiced the jury against Yokum's own sound measurements, which had been recorded and preserved. Funky 544 argued, and the district court agreed, that the 2014 measurements were different from the earlier doorway readings at issue in Yokum's motion for contempt and were outside the scope of the district court's order finding spoliation.
In the documents containing the 2014 measurements, Funky 544 recorded the ambient sound level, the sound level 25 feet from the nightclub's door, and a reading in the doorway closest to the speakers. In addition, the documents reflecting the 2014 measurements were produced to Yokum in discovery, while the documents subject to the contempt motion were not. "Under La. C.C.P. art. 1471, when a party refuses or is unable to comply with a discovery order, the trial court in a pending action 'may make such orders in regard to the failure as are just,' thereby granting the trial court broad discretion to impose a range of sanctions." Carter , 2013-0529 at p. 7, 168 So.3d at 703-04 (citing La. C.C.P. art. 1471(A) ). "A trial *741 judge's decision to admit or exclude evidence will not be reversed on appeal absent a clear showing that it abused that discretion." Young v. Logue , 94-0585, p. 44 (La. App. 4 Cir. 5/16/95), 660 So.2d 32, 60. We find no abuse of discretion in the district court's ruling.
Yokum asserts on appeal that the district court allowed improper testimony by Funky 544's expert, Zwerling: (1) that Zwerling's request to access Yokum's home to perform sound measurement testing at night was denied, and (2) that Yokum made comments to Zwerling during the June 2014 testing as to a location in his home where noise levels were not a "problem." Yokum contends that Zwerling's testimony was prejudicial, designed to make Yokum appear unreasonable in the eyes of the jury, and violated an order in limine limiting Zwerling's testimony to "discussions and definitions related to what is in the New Orleans Noise Ordinance."
With respect to Zwerling's comment about the limitations imposed on his testing, we find that the district court countered any prejudicial effect with an instruction about the scope of the testing allowed by the court and agreed to by the parties, clarifying that "there was no impact testing that was done at night." In addition, before Zwerling testified, Yokum's expert witness, Bommer, also testified as to the scope of the testing allowed by the court and agreed to by the parties. Any supposed error was made harmless and is not reversible. See, e.g., Abadie v. Metro. Life Ins. Co. , 2000-344, p. 41 (La. App. 5 Cir. 3/28/01), 784 So.2d 46, 77 (limiting instruction as to the scope of evidence jury was allowed to consider was "sufficient to limit any prejudicial harm caused by the improperly introduced evidence"). See also Campbell v. Dolci , 400 So.2d 1087, 1089 (La. App. 1st Cir. 1981).
Yokum also complains that the district court improperly overruled his objection to Zwerling's testimony as to comments made by Yokum during sound measurement testing in Yokum's home. " La. C.E. 801(D)(2)(a) provides specifically that the following statements are not hearsay: 'A statement ... offered against a party [which] is [h]is own statement, in either his individual or a representative capacity.' " Blackman v. Eggerton , 96-1624, p. 10 (La. App. 4 Cir. 11/13/96), 684 So.2d 78, 83. We find no abuse of discretion in the district court's admission of this statement as an unsolicited admission of a party.
Yokum further contends that Funky 544 violated the district court's order in limine precluding Funky 544 from "commenting upon, referring to, or exhibiting any evidence of plaintiffs' lawsuits against similar businesses except for impeachment purposes" during trial. According to Yokum, the district court erred in allowing counsel for Funky 544 to make arguments to the jury concerning Yokum's noise complaints against other businesses and that Funky 544 improperly introduced prior deposition testimony taken in connection with other lawsuits.
The district court, however, found that none of its prior orders was specifically violated and that Funky 544's actions did not rise to the level needed for a JNOV or new trial. We agree. As the district court noted in its reasons for judgment denying the JNOV and new trial, the order in limine only addressed lawsuits, and Funky 544 did not introduce the lawsuits against these businesses into evidence or put these lawsuits before the jury. Although Yokum argues that deposition testimony from other lawsuits was improperly introduced into evidence, he fails to identify the testimony about which he complains or *742 explain how the order in limine was violated.
We also find no basis on which to conclude that counsel's statements to the jury were unfairly prejudicial. "The jurisprudence requires that closing argument must be limited to 'the evidence admitted and the inferences that may be properly drawn from it.' " Clement v. Griffin , 91-664, p. 17 (La. App. 4 Cir. 3/3/94), 634 So.2d 412, 428 (quoting Ogletree v. Willis-Knighton Memorial Hospital , 530 So.2d 1175, 1181 (La. App. 2d Cir. 1988) ). At trial, Yokum and Anderson each testified as to their individual complaints about noise from neighboring businesses, and Yokum testified about a complaint log that he kept regarding noise from several different French Quarter businesses. Yokum's experts, Bommer and Dr. Porter, both testified about work they performed for Yokum in connection with his complaints of noise from other businesses and about Yokum's complaint log. Thus, while counsel for Funky 544 argued in closing that Yokum had made claims against other businesses, we find that such argument was appropriately limited to the evidence admitted at trial, and we find no abuse of discretion by the district court with respect to this issue.
In addition, Yokum complains of certain testimony by Marullo that Funky 544 operated within the law and as a good neighbor; Yokum argues this testimony "opened the door" to rebuttal evidence that the district court erred in excluding. The rebuttal evidence included alleged violations of City Code Section 66-203(3)(d) of the NONO, the New Orleans Alcoholic Beverage law, and the preliminary injunction.
With respect to Section 66-203(3)(d), as discussed in this opinion, this Court previously concluded that the ordinance is not applicable to this matter, and we find this Court's holding to be the law of the case. Yokum , 2015-1353 at pp. 12-13, 202 So.3d at 1073-74 ; See In re M.W. , 93-1809 at p. 3, 641 So.2d at 584. We therefore find no abuse of the district court's discretion in excluding evidence of alleged violations of Section 66-203(3)(d). This assignment must be rejected.
Regarding the New Orleans Alcoholic Beverage law, Yokum failed to proffer any evidence of such violations. When the district court rules evidence inadmissible, a proffer (offer of proof) can be made pursuant to La. C.C.P. art. 1636, which requires that the district court then "shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence." "[T]he purpose of mandating the trial court to allow the excluded evidence to be proffered is so that 'the testimony (whatever its nature) is available for appellate review.' " Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C. , 2010-1303, p. 10 (La. App. 4 Cir. 9/21/11), 75 So.3d 471, 477 (quoting McLean v. Hunter , 495 So.2d 1298, 1305 (La. 1986) ). "It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error." Ritter v. Exxon Mobile Corp. , 2008-1404, p. 9 (La. App. 4 Cir. 9/9/09), 20 So.3d 540, 546.
As an appellate court, this Court's review is limited to the evidence presented in the record. See La. C.C.P. art. 2164. Without proffered evidence in the record, we have no ability to review that evidence; thus, we cannot find that the district court abused its discretion by excluding it. Yokum is precluded from raising this issue on appeal.
*743 Yokum argues that the district court erred in excluding evidence of alleged violations of the preliminary injunction, which Yokum sought to introduce in rebuttal to Marullo's testimony that Funky 544 complied with applicable laws. Nevertheless, Yokum's counsel mentioned the injunction in both opening and closing statements to the jury. In addition, the preliminary injunction dealt largely with alleged violations of the NONO, a topic around which much of the trial testimony centered. Moreover, whether Funky 544's activities complied with the preliminary injunction was an issue reserved to be tried by the district judge, not the jury. "The trial court has great discretion in controlling the presentation of evidence, including the power to admit or refuse to admit rebuttal evidence." Beecher v. Keel , 94-0314, p. 9 (La. App. 4 Cir. 9/29/94), 645 So.2d 666, 671. Thus, we cannot say that the district court abused its discretion in excluding evidence about alleged violations of the preliminary injunction. We find this assignment without merit.
Yokum also contends that the district court erred in limiting the testimony of Yokum's expert, Anthony Tung, as to the history and character of the French Quarter, while Funky 544's witnesses were permitted to testify as to the character of Bourbon Street and counsel was permitted to argue that the French Quarter is an entertainment destination for tourists. Yokum contends that he was denied the opportunity to rebut comments characterizing the "party atmosphere" of the neighborhood, causing him prejudice. We disagree.
Contrary to Yokum's assertion, the record reveals that Tung testified about the unique characteristics and historical significance of the Yokum house and the importance of historical preservation in the French Quarter. The district court did not permit Tung to testify "as to the commercialization or quality of life or change of quality of life in the [French] Quarter as it relates to anyone else other than Mr. Yokum and Ms. Anderson." The district court found that claims of injury to the French Quarter itself or other residents were not relevant, because Yokum and Anderson were the only plaintiffs.
Yokum fails to explain with any jurisprudence, and we find none, demonstrating that the district court abused its discretion in limiting Tung's testimony. "Whether evidence is relevant is within the discretion of the trial judge...." Pattison v. Valley Forge Ins. Co. , 599 So.2d 873, 877 (La. App. 4 Cir. 1992). "Irrelevant evidence is inadmissible, and ... [a] trial court's rulings on such evidentiary issues will not be disturbed unless a clear abuse of discretion is shown." Jones v. Peyton Place, Inc. , 95-0574, pp. 11-12 (La. App. 4 Cir. 5/22/96), 675 So.2d 754, 763 (citations omitted).
Funky 544's sound expert, Zwerling, testified as to the importance of context in which sound measurements occur, explaining the difference between a sound impact study on Yokum's home with Bourbon Street nearby, which Zwerling described as a "zoned entertainment district," and a rural community with a racetrack built nearby. Yokum did not object to this testimony at trial. Yokum's expert, Tung, also testified to his personal experience of the crowded atmosphere he experienced on Bourbon Street on a particular weekend. Likewise, Yokum did not object. "It is well established that when a party fails to contemporaneously object to the introduction of objectionable evidence, that party waives the right to complain of the issue on appeal." Aisola v. Beacon Hosp. Mgmt., Inc. , 2013-1101, p. 10 (La. App. 4 Cir. 4/2/14), 140 So.3d 71, 78.
*744 Funky 544's counsel made closing arguments that Yokum had unrealistic expectations regarding noise surrounding his property, in light of patrons going to "party" on Bourbon Street during holidays and major sporting events. The record contains no contemporaneous objection to such statements. "As in the case of evidentiary matters, objections to statements made during closing arguments must be made contemporaneously; failure to lodge a contemporaneous objection in the trial court waives the right to complain on appeal." Karagiannopoulos v. State Farm Fire & Cas. Co. , 94-1048, p. 12 (La. App. 5 Cir. 11/10/99), 752 So.2d 202, 209.
"Our jurisprudence holds that trial counsel's great latitude when arguing before a jury is subject to the trial judge's control to confine the argument to evidence which has been properly admitted." Id. , 94-1048 at p. 11, 752 So.2d at 209. Importantly here, the district court instructed the jury that "statements and arguments of counsel are not in evidence in the case and you should ignore those arguments which are not supported by the facts as you find them." Courts have found such curative jury instructions sufficient to remedy supposedly improper comments as to a party's truthfulness made in closing arguments. See, e.g., id. This assignment is without merit.
Yokum also asserts that the district court erred by excluding a rebuttal witness, Ben Polcer, who may have testified to his own noise complaints during a period in which he lived on Toulouse Street, while allowing Funky 544's attorneys to argue to the jury there were no other complaining neighbors. Yokum sought to call Polcer to rebut testimony by D'Arensbourg that Funky 544 had received no noise complaints from neighbors other than Yokum and Anderson. The district court excluded Polcer's testimony, finding that Polcer was not a true rebuttal witness because (1) Yokum was aware of Funky 544's defense throughout this litigation that no other neighbors had complained of noise, but Yokum failed to call Polcer as a witness in his case in chief; and (2) Funky 544 sought from Yokum in discovery the names of any other persons who had complained of noise from Funky 544, and Yokum never provided any names.
The district court gave Yokum the opportunity to proffer Polcer's testimony, but Yokum chose not to do so; instead, Yokum's counsel made a statement to the district court that Polcer "would have said that Funky 544 was a nuisance and confirmed what Mr. Yokum and Ms. Anderson say and contradicted what the defense witnesses say related to what Funky was doing on Toulouse Street at their establishment at 544."
Where a party who contends his evidence was improperly excluded fails to make a proffer, "he cannot contend such exclusion is error." Ritter , 2008-1404 at p. 9, 20 So.3d at 546. On numerous occasions, Louisiana courts have found that an attorney's statement to the district court as to what a witness would testify does not fulfill the requirements of La. C.C.P. art. 1636, insofar as this article calls for "a statement setting forth the nature of the evidence." Williams v. Lafayette City-Parish Consol. Gov't , 2011-281, p. 5 (La. App. 3 Cir. 10/5/11), 72 So.3d 1023, 1028 (citing Holt v. Bethany Land Co. , 36,888, p. 14 (La. App. 2 Cir. 4/9/03), 843 So.2d 606, 614 ; McHale v. Schwegmann Bros. Giant Super Mkts., Inc. , 97-788, p. 1 (La. App. 5 Cir. 11/23/98), 722 So.2d 328, 328 )("An attorney's statement about what [a witness whose testimony was ruled inadmissible] would say does not meet the requirements of Art. 1636 unless followed up by either testimony *745 'during a recess' or by subsequent deposition.")
As stated earlier, this Court's review is limited to the evidence presented in the record. See La. C.C.P. art. 2164. Yokum was afforded the opportunity to proffer Polcer's testimony and declined to place the testimony on the record. We find that, under the facts before us, Yokum's attorney's pronouncement to the district court concerning the general topic of Polcer's proposed testimony fails to set out sufficient factual statements to preserve the excluded testimony for appellate review. As the proffered testimony is not in the record for our review, we cannot find that the district court abused its discretion by excluding it. Yokum is precluded from raising this issue on appeal.
Finally, Yokum argues that the district court failed to consider the "combined prejudicial effect of [Funky 544's] conduct and statements," as well as legal errors warranting a JNOV and/or new trial. Yokum cites to no law or record evidence supporting his request for such relief. Because of our conclusions herein, we find no basis on which JNOV or new trial is warranted. This assignment is without merit.
Accordingly, for the reasons set forth in this opinion, the September 25, 2014 and March 23, 2016 judgments of the district court are affirmed.
AFFIRMED

Our review of the sufficiency of jury instructions does not require us to determine whether the district court properly reviewed its own contempt judgment on a motion to reconsider.

La. C.C.P. art. 1471 provides, in pertinent part:
A. If a party or an officer, director, or managing agent of a party or a person designated under Article 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1464 or Article 1469, the court in which the action is pending may make such orders in regard to the failure as are just, and among others any of the following:
(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.
(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Subparagraphs (1), (2), and (3) of this Paragraph, unless the party failing to comply shows that he is unable to produce such person for examination.

Yokum also claims in these four assignments of error that the jury failed to find Funky 544 liable under La. C.C. art. 668. Yokum did not brief this issue on appeal. "[I]f an appellant identifies an assignment of error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue or assignment is deemed waived." McMaster v. Progressive Sec. Ins. Co. , 2014-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 (citing Uniform Rules Courts of Appeal, Rule 2-12.4(B)(4) ).

An exception exists for a proprietor/landowner engaged in "ultrahazardous activity" who is subject to an absolute liability standard under La. C.C. art. 667. See 615 Bourbon , 2007-1785 at p. 21, 977 So.2d at 874. No ultrahazardous activity is alleged in this litigation, and the absolute liability standard does not apply to the facts on appeal.

According to Sec. 66-136 of the NONO, "ambient noise level means the sound pressure level of the all encompassing noise associated with a given environment, being usually a composite of sounds from many sources and excluding the specific noise under investigation; also the A-weighted, sound pressure level exceeded 90 percent of the time (L 90)."

"Mr. Bommer testified that the sound level in the nightclub should not exceed 86 dBA or 98 dBC, whereas Mr. Zwerling testified that the sound level should not exceed 96 dBA. Furthermore, Mr. Zwerling explained that he disagreed with Mr. Bommer's methodology in measuring the ambient sound level,[footnote omitted] the measurement the NONO uses a foundation to determine and compare alleged noise violations against under Sec. 66-202. Mr. Bommer used an Lmax level to measure ambient sound, instead of the measurement required by the NONO, according to Mr. Zwerling." Yokum , 2015-1353 at p. 9, 202 So.3d at 1071-72.

Marullo testified that "the nightclub's Toulouse St. doors were closed... Funky 544 later insulated the Toulouse St. doors shut with plexiglass at Mr. Zwerling's recommendation. Mr. Marullo also testified that other sound reduction measures were taken by the nightclub:
• insulating the bottom of the stage to trap the bass in that area;
• installing acoustical foam;
• relocating sound speakers more than 10 feet away from its opening; installing a plexiglass drum shield around the drummer;
• using an inner-ear monitoring system that allowed sound from the stage to be reduced and for removal of speakers in the stage area; and
• installing a sound alert monitor at its doorway to warn its employees that the sound limit was being approached." Yokum , 2015-1353 at p. 10, 202 So.3d at 1072.